Barbara Ann BLARE, Plaintiff
and Appellant,

v.

Vada N. BLARE, Defendant
and Appellee.

Nos. 13043, 13110.

Supreme Court of South Dakota.

Argued Nov. 25, 1980.

Decided Feb. 25, 1981.

Wesley W. Buckmaster of Stephens, Quinn, Carr, Tschetter & Buckmaster, Belle Fourche, for plaintiff and appellant.

John H. Shepard of Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for defendant and appellee.

FOSHEIM, Justice.

Two appeals taken from separate orders entered by the trial court in the above-entitled divorce action were consolidated. The first appeal is from an order that dissolved proceedings initiated by appellant to vacate or modify the judgment. The second appeal seeks review of an order that modified the visitation provisions of the divorce judgment entered in September of 1977. We affirm in part and reverse in part and remand.

Appellant and appellee were married in 1959, to which union four children were born. During their marriage, they acquired a ranch, consisting of approximately 4,000 acres in Custer County, a residence in Sturgis, and considerable livestock and other personal property.

In 1975, the parties sold their ranch on a contract for approximately $423,000.00, with a $123,000.00 down payment. The deferred balance was payable over fifteen years at 7.7% interest. The divorce action instituted by appellant in 1976 requested child support, alimony and a division of the marital property. At the divorce trial, both parties appeared in person and with counsel. A stipulation covering child custody, child support, alimony and a division of the property was dictated into the record by counsel for appellee. This stipulation was never reduced to a formal writing. The divorce decree adopted the terms of the agreement, except that the alimony allowance was reduced from $250.00 to $200.00 per month.

The divorce judgment awarded custody of the two daughters to appellant. Appellee was granted custody of the two sons. The decree further provided:

(7) Defendant shall pay, by way of property settlement, child support for Emily and Sally Blare, and alimony [in] the sum of $700.00 per month, the first payment will become due and payable to the Meade County Clerk of Courts the 1st day of October, 1977, and a like amount the 1st day of each month for a period of 158 months or until the total sum of $111,300 has been paid.

(8) In addition to the foregoing amount, Defendant shall pay annually to the Meade County Clerk of Courts, for Plaintiff's use and benefit, the sum of $1,500 the first payment of which shall become due and payable on or before the 15th day of December, 1977, and a like sum the 15th day of each December thereafter until thirteen (13) annual installments have been paid for a total amount of $19,500. The unpaid balance, if any, under this provision shall terminate upon Plaintiff's death. Should Plaintiff remarry, Defendant's obligation under this provision shall thereupon terminate, provided Defendant has paid seven (7) annual installments, which number of installments Defendant shall be required to make whether or not Plaintiff is remarried.

(9) From the monthly payment set forth in Paragraph 7 of this Decree, $200 of each payment shall be designated as child support, and $200 additional dollars of each payment shall be allocated for and designated as alimony, which designation shall be retroactive to the first day of January, 1977, and shall apply from that time at the rate of $200 per month to the periodic payments made by the Defendant to the Plaintiff during pendency of these proceedings. This designation shall not, however, be considered as a limitation upon, or a credit toward any financial obligations imposed upon the Defendant under the terms of this Judgment and Decree.

While the divorce action was pending, appellant moved to Denver, Colorado, for medical treatment. In February of 1980, appellant commenced show cause proceedings under SDCL 15–6–60(b)[1] to vacate, or in the alternative, modify the divorce judgment as it related to interest, child support, and alimony. She also requested attorney fees and court costs.

In appeal #13110, appellant concedes that SDCL 15–6–60(b) imposes a one-year limit on §§ (1), (2), and (3), thereof, but seeks to bring herself within SDCL 15–6–60(b)(6) to which the one-year limitation does not apply, provided the motion is made within a reasonable time. Appellant relies heavily on *Zundel v. Zundel*, 146 N.W.2d 896, 901 (N.D.1966), wherein the North Dakota Supreme Court addressed the relief available under Rule 60(6)(b) of the Federal Rules of Civil Procedure with this quote from 3 Barron & Holtzoff, Federal Practice and Procedure § 1329, at 417:

'This broad language [of 60(b)(6)] gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice. Of course, this power is not provided in order to relieve a party from free, calculated and deliberate choices he has made. The party remains under a duty to take legal steps to protect his interests. But if it is unjust that a judgment be enforced, Rule 60(b)(6) provides an avenue for escape from the judgment, unhampered by detailed restrictions, and the courts have used this clause in a wide variety of situations.'

The North Dakota Supreme Court has held that the rule is remedial in nature and should be liberally construed and applied. *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D. 1970); *Sioux Falls Construction Co. v. Dakota Flooring*, 109 N.W.2d 244 (N.D.1961).

Appellee argues that the reasons expressed by appellant to set aside the judgment actually relate to SDCL 15–6–60(b)(1), (2) and (3), which are limited to one year after the judgment is entered, and that her petition does not come within SDCL 15–6–60(b)(6).

Appellant urges mistakes and negligence of counsel as reasons for justifying relief. She contends that the reasonable time requirement of SDCL 15–6–60(b) depends upon the circumstances and that she was

---

1. SDCL 15–6–60(b) reads:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under § 15–6–59(b);

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. Section 15–6–60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court.

not informed of the deficiencies in the judgment by the attorney who represented her in the divorce action. She also claims that the proceedings to vacate were commenced within a few months after contacting her new counsel. For these reasons, appellant contends, she did not freely and deliberately enter into the settlement agreement. Appellant, however, does not claim that she was coerced into the stipulation and concedes that fraud was not involved.

It appears from the record that appellant was specifically asked by the trial judge at the divorce hearing if she fully understood the proceedings. She answered in the affirmative. The court also inquired whether she understood that this was dispositive of all of her property rights in the matter and that the stipulation was a final and complete settlement of all matters. Again, plaintiff responded in the affirmative.

As pointed out in *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), in the absence of fraud, free deliberate choices, even though formed upon erroneous advice, are not subject to relief under Rule 60(b)(6).

■ SDCL 15–6–60 is essentially a restatement of the early policy in this state. *National Surety Corp. v. Shoemaker*, 86 S.D. 302, 195 N.W.2d 134 (1972). In the absence of fraud or other reasons that would apply to any judgment, a divorce decree that divides or allots property or provides for payment of a gross sum in lieu thereof is a final and conclusive adjudication and cannot be subsequently modified. *Holt v. Holt*, 84 S.D. 671, 176 N.W.2d 51 (1970); *Van Diepen v. Van Diepen*, 73 S.D. 366, 43 N.W.2d 499 (1950). Without such a showing, appellant's petition cannot prevail, and it is unnecessary to consider whether her motion to vacate was made within a reasonable time after rendition of the judgment.

The proceedings instituted by appellant to set aside the judgment were in the original action. She contends that if the judgment cannot be set aside, her showing was nevertheless sufficient to establish a change in circumstances sufficient to justify an increase in the monthly alimony and child support payments.

■ When a divorce is granted, SDCL 25–4–41 authorizes the trial court to modify its order compelling one party to make suitable allowance to the other party for support.[2] An alimony award is determined independently of child support considerations, *Price v. Price*, 278 N.W.2d 455 (S.D. 1979), and despite the fact that a property division was made. *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979). The authority to modify the alimony award is not affected by the fact that the original divorce judgment was based on an agreement between the parties. *Connolly v. Connolly*, 270 N.W.2d 44 (S.D.1978); *Simmons v. Simmons*, 67 S.D. 145, 290 N.W. 319 (1940).

■ As noted above, however, the divorce decree directed appellee to pay, by way of property settlement, child support for Emily and Sally Blare and alimony in the sum of $700.00 per month for a period of 159 months or until the total sum of $111,300.00 has been paid; of this amount, $200.00 of each payment was designated as child support, and an additional $200.00 was allocated as alimony. That was a gross sum award. In *Holt v. Holt*, supra, we held that when a gross or lump sum is allowed the wife as alimony, finality attaches, and the fact that the court chooses to make it payable in installments over a fixed period (usually for the benefit of the payor) does not destroy its finality or alter the rule. In *Holt*, we quoted with approval from *Ziegenbein v. Damme*, 138 Neb. 320, 323, 292 N.W. 921, 923 (1940), as follows:

'Obviously, the purpose of both the court and the parties, in providing for or

---

**2.** SDCL 25–4–41 reads:

Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects.

in accepting a gross allowance of alimony, is to define and fix with finality the scope of the rights and the obligations of the parties. . . . [I]t is our view that an unqualified allowance in gross, in a divorce decree, whether payable immediately in full or periodically in installments, and whether intended solely as a property settlement or as an allowance for support, or both, is such a definite and final adjustment of mutual rights and obligations as to be capable of a present vesting and to constitute an absolute judgment, and the court cannot subsequently modify the amount thereof.'

84 S.D. at 674, 176 N.W.2d at 53.

Since the judgment provided for payment of a gross sum to appellant payable in installments, it constituted a final judgment that cannot be modified.

■ SDCL 25–4–45 [3] grants the trial court continuing jurisdiction in a divorce action to modify the judgment concerning support and maintenance of the children. *Kerr v. Kerr*, 74 S.D. 454, 54 N.W.2d 357 (1952); *Matthews v. Matthews*, 71 S.D. 115, 22 N.W.2d 27 (1946). As with alimony, child support payments can be adjusted even though they were originally based upon a stipulation (*See, Johnson v. Lowary*, 81 S.D. 202, 132 N.W.2d 823 (1965); *Matthews v. Matthews*, supra) when the trial court, in its discretion, determines that conditions have changed. *Holt v. Holt*, supra; *Peshek v. Peshek*, 297 N.W.2d 323 (S.D. 1980); *Jameson v. Jameson*, 90 S.D. 179, 239 N.W.2d 5 (1976). The "substantial change of circumstances" standard necessary for modification of child custody provisions contained in divorce decrees does not then apply. *Tank v. Tank*, 272 N.W.2d 831 (S.D. 1978).

■ The rule of finality relating to property divisions and gross sum awards does not apply to child support. It is settled law in this state that the trial court has authority under SDCL 25–4–45 to modify

the divorce decree and provide for support of the minor children even though such allowance was not claimed in the original complaint nor provided for in the judgment. *Marks v. Marks*, 22 S.D. 453, 118 N.W. 694 (1908). In *Houghton v. Houghton*, 37 S.D. 184, 157 N.W. 316 (1916), the divorce decree awarded plaintiff the custody of the twin children, but made no provision for their maintenance, support, or education. Prior to entry of the divorce decree, the parties settled their property matters out of court, with the defendant paying plaintiff the sum of $2,200.00 for plaintiff's allowance, attorney fees, and for the support of the children. The plaintiff sought a further child support provision. In addressing the statutes regarding modification of divorce decrees, we said:

The distinction between the language of the two sections of the statute is plain and obvious, and no one ought to be confused as to the attitude of this court upon the two questions. Moreover, there is a fundamental difference between the position of divorced persons towards each other and the position of the children with relation to either or both of the parents. While the former husband and wife are no longer husband and wife, the relation of parent and child still exists between the mother and the children on the one hand, and between the father and the children on the other hand, even though the mother has their exclusive custody. In a divorce case the children are, and continue to be virtually wards of the court. [Citation omitted.] It is the welfare of the children that the court is concerned with, not the wishes of either of the parents, and we do now declare that parents are powerless to provide by irrevocable contract what the future financial liability of either shall be with relation to the support, maintenance, and education of the children. [Citations omitted.] *The court has the power, and*

3. SDCL 25–4–45 reads:

In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

*it is its bounden duty, to look after the welfare of the children when the matter is properly brought to its attention.* [Emphasis supplied.]

37 S.D. at 188–89, 157 N.W. at 317.

■ Appellant's affidavit shows that, with part-time employment, she earns only $78.00 per week. Her rheumatoid arthritis continues to prevent her from obtaining employment requiring dexterity. We take judicial notice that, during the three years since the divorce judgment was entered, this nation's economy has been subject to inflation and that with the advancing age of the children, the cost of food, clothing, and other necessities has increased. *Karim v. Karim*, 290 N.W.2d 479 (S.D.1980); *Peshek v. Peshek*, supra. We accordingly conclude that, considering appellant's health and capacity to earn, together with the changing times, the trial court abused its discretion in denying appellant's request to increase the child support payments. *Hanson v. Hanson*, 252 N.W.2d 907 (S.D.1977).

Appeal #13043 is from an order specifying child visitation rights. By the terms of the divorce judgment entered in September of 1977, both parties were granted reasonable and liberal rights of visitation with the children not in their custody.

In October of 1979, appellee initiated proceedings to clarify the child visitation provision of the divorce decree. He claimed to have experienced difficulty exercising his visitation rights with his daughters in the State of Colorado, and requested that the terms and conditions of the divorce decree be made more definite and specific as to visitation. Appellant appeared specially by counsel and resisted the motion on jurisdictional grounds. Both daughters were then enrolled in school in Colorado. The only evidence introduced at the hearing was appellee's affidavit.

The trial court entered findings of fact and conclusions of law determining that it had jurisdiction over the subject matter and the parties by virtue of the divorce action. The order amending the judgment allowed appellee to have custody of his daughters on alternating Christmas and Thanksgiving holidays and further granted him visitation rights in South Dakota for a period of sixty consecutive days each summer.

Basically, the issue is whether that modification of the decree of divorce is a custody determination within the purview of the Uniform Child Custody Jurisdiction Act (SDCL ch. 26–5) and, if so, whether the trial court erred in exercising jurisdiction under the provisions of that statute.

Appellant seems to acknowledge that the jurisdiction of the trial court to modify the divorce judgment concerning direction for the custody, care, and education of the children under SDCL 25–4–45 is continuing, *In Re Crawford*, 81 S.D. 331, 135 N.W.2d 140 (1965), but contends that the trial court should have deferred to the jurisdiction of the State of Colorado because South Dakota cannot meet the requirements of the Uniform Child Custody Jurisdiction Act.

Appellant relies primarily on the provisions of SDCL 26–5–22 and 26–5–23.[4]

4. SDCL 26–5–22 reads:

A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

SDCL 26–5–23 reads:

In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, including:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate.

We recognize a distinction between custody and visitation rights. *Hershey v. Hershey*, 85 S.D. 85, 177 N.W.2d 267 (1970). Unlike custody, visitation rights can be modified without showing a material change of circumstances of the parties when custodial rights would not thereby be prejudiced. *Andera v. Andera*, 277 N.W.2d 725 (S.D.1979); *Hershey v. Hershey*, supra. The relief sought was not a change in the custody determination of the original divorce decree, but rather a clarification of its reasonable and liberal visitation provisions. We conclude that the trial court acted within its prerogative to make that clarification and, in doing so, did not exceed the purposes or meaning of SDCL ch. 26–5.

In view of the conclusions reached, it is unnecessary to address the other contentions urged by appellant except that, upon remand, appropriate attorney fees to be allowed appellant in the trial court should be determined. On appeal, she is awarded attorney fees in the sum of $2,000.00.

The order of the trial court in #13110 is affirmed in part and reversed in part and the case is accordingly remanded. The order in #13043 is affirmed.

All the Justices concur.