Brenda Lee DIXON, Plaintiff
and Appellee,

v.

Roger Dean DIXON, Defendant
and Appellant.

No. 15788.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 1988.

Decided April 27, 1988.

Linda Lea Viken of Finch, Viken, Viken & Pechota, Rapid City, for plaintiff and appellee.

Jacqueline M. Rasmussen of Nelson & Harding, Rapid City, for defendant and appellant.

MILLER, Justice.

This is an appeal from a judgment amending decree of divorce wherein the trial court increased the amount of child support, required a wage assignment from husband, entered civil judgment against husband as reimbursement for losses sustained in the sale of the property, denied a reduction in alimony, and awarded attorney fees. We affirm in part, and because of the improper utilization of affidavits on certain issues, we reverse in part and remand.

## FACTS

Because of the state of the record, it is necessary to segregate this section into two parts (1) undisputed factual background and (2) matters at issue. There are no transcripts or depositions in the record. As will be alluded to later, the disputed facts were submitted to the trial court by way of affidavit and written argument of counsel.

(1) *Undisputed Factual Background—* From our review of the record and the appellate briefs it appears that the following factual scenario is not in dispute.

Brenda Lee Dixon (wife), and Roger Dean Dixon (husband), were married on November 11, 1967. Two daughters, presently ages eleven and twelve, were born of this marriage. The parties were divorced on January 25, 1985. Husband was, and still is, steadily employed. Husband is now remarried and allegedly contributes to the support of his present wife's children, who are not his own.

The parties, who were represented by counsel in the divorce, entered into a stipulation and agreement which was ultimately

accepted and incorporated into the divorce decree by the trial court. Pursuant to this stipulation, the debts and obligations of the parties were divided. Alimony was set at $333 per month from February 1985 to February 1986; commencing March 1986 alimony was to be reduced to $250 per month, with the provision that when, and if, wife received employment and earned a salary over $700 per month, alimony would be reduced to $100 per month.

The parties were granted joint legal custody of the minor children, with physical custody granted to wife subject to a schedule of visitation for husband set out in the agreement. Child support was set at $250 per month per child, with husband and wife each allowed to claim one of the children for purposes of income tax exemptions. Finally, husband was to deposit $10 per month into the children's savings accounts for their post-secondary education.

During the course of the marriage, the parties acquired real property, consisting of the marital home and an adjoining mobile home park. This property was purchased for $95,000 in 1978, on a contract for deed. Under the decree, the title to the real property was transferred to a tenancy in common and placed for sale.[1] The relationship established in the stipulation and in the divorce decree was that of the husband in the role of landlord and wife in the role of tenant. Husband was given sole responsibility for the payment of insurance, taxes, and the payments on the contract for deed. Additionally, husband was to collect all rental income from the mobile home park. Accordingly, husband was to assume complete managerial responsibility and to specifically be responsible for all maintenance and repairs to the residence and property. Until the real property was sold, wife and children were granted the exclusive possession and use of the marital home. Husband was also ordered to pay wife $6,500 plus ten percent interest (approximately $120.42 per month for seventy-two months).

Subsequent to the divorce, problems developed. A hearing was held and later, on April 30, 1985, the court entered an order entitled "Terms and Conditions of Occupancy, Maintenance and Use of the Marital Home and Land." Basically, the order specified and clarified the terms provided in the stipulation and agreement, which had been incorporated in the divorce decree. (At this hearing, custody and visitation were also placed at issue and subsequently, on September 3, 1985, the parties stipulated to an order for mediation to resolve visitation conflicts. However, after two sessions, husband cancelled further appointments.)

On August 1, 1986, wife received notice of default on the contract for deed on the real property, with the payment of $1,250 past due since December 20, 1985. The notice advised that unless payment was made within thirty days, the deed holder would foreclose.

(2) *Matters at Issue*—On August 4, 1986, husband (through new counsel) filed a motion for an order to show cause, requesting an amendment to the decree of divorce seeking the principal care, custody and control of the minor children, or in the alternative an adjustment of the custody and visitation schedule, and a reduction of the alimony payments. Husband also claimed that he should receive some credit for the "free rental" enjoyed by wife for living in the home pending the sale of the property. This motion was supported by a three-page affidavit with two attachments itemizing certain of his income and expenses. The affidavit specifically requested that oral testimony be allowed. (This is the last such request by any party contained in the record.)

Wife then filed a motion for contempt on September 10, 1986. She also filed an affidavit in response to the order to show cause and in support of her own motion for contempt. Following this filing was a flurry of affidavits by both parties making

---

**1.** It was not to be sold for less than $95,000 unless otherwise agreed by the parties. If not sold by January 25, 1986, the price is to be reduced by $2,500; if not sold by January 25, 1987, the price was to be reduced to $90,000 cash.

assertions and accusations against each other.

As far as we can tell from the record, no hearing was held on the above specific motions. However, after a hearing held on September 15, 1986, the trial court did enter an interim order requiring husband to quitclaim his interest in the real estate to wife and further giving her absolute authority to sell the property. The court also ordered that it would later determine the amount husband owed wife "as a result of the loss on the sale of the property." (There is no transcript of this hearing. The trial court entered no memorandum decision nor findings and conclusions. Apparently the court assumed that the property would sell for less than the agreed price and that husband was at fault for such. Because of the state of the record, we are not privy to the argument of counsel nor the court's rationale on this interim order.)

After the trial court entered the interim order, wife filed a motion for increase in child support and alimony. Once again, the flurry of affidavits continued with both parties making additional accusations and assertions against each other. Attached to some of the affidavits were various documents, which the parties felt supported their claims.

The record also contains correspondence of counsel to the court, usually in the form of argument on the merits.[2]

On January 21, 1987, the trial court filed a memorandum decision in which it specifically stated that "the matter has been submitted on affidavits and by way of argument through correspondence with the court. I do not need additional testimony to decide the issues now before the court." The court, which later adopted findings of fact and conclusions of law implementing specific portions of its memorandum decision,

(1) denied husband's request for reduction of alimony and child support,

(2) continued the custody and visitation as previously ordered,

(3) determined that the sale of the real estate was less than what it was worth because of the conduct and "obstreperous behavior" of husband and that he frustrated the sale of the property,

(4) determined that because husband was responsible for the shortfall referred to in (3) wife's equity should have been $12,668, but that she only received $6,333,

(5) because of (3) and (4), ordered a civil judgment against husband for $6,335,

(6) increased child support payments by $59 per month pursuant to the statutory guidelines (SDCL 25–7–7),

(7) granted a wage assignment in the amount of child support and alimony, and

(8) awarded attorney fees of $1500.

On appeal, husband argues (by way of his third lawyer), among other things, that the court received insufficient evidence with regard to the property, the cause of any disrepair, the real estate market and its effect upon the sale price, and received no testimony with regard to this except that contained in conclusionary affidavits of the parties. The other issues were also decided only upon consideration of various affidavits with attachments filed by the parties, the correspondence of counsel with various attachments, and argument of counsel.

## DECISION

### USE OF AFFIDAVITS

The trial court was confronted with a complex set of greatly disputed facts. Its experience with the parties, the property, the litigation, and the procedural history of the case, may very well have aided it to the extent that *it* did "not need additional testimony." However, due to the absence of any transcripts and the state of the record, *we* do not have that luxury. Perhaps additional testimony was not needed for its

---

2. For example, wife's counsel submitted a letter attaching six pages of a realtor's file and later submitted another letter of some nine pages with a thirteen-page attachment including an appraisal, spread sheets of various real estate data, a check stub, a statement of current and anticipated financial needs of wife and various correspondence to husband's counsel.

purposes, but it surely is for ours. Wife argues that husband consented to the procedure by not insisting on oral testimony and by participating in the method of the proceedings. However, that argument does not respond to our need to have the ability to make a meaningful review on appeal.

We begin with the basic premise that "[a]ffidavits are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, may omit important facts or give a distorted picture of them." *Brewster v. F.C. Russell Co.*, 78 S.D. 129, 132, 99 N.W.2d 42, 44 (1959); 2A C.J.S. *Affidavits* §§ 56–57 (1972). Affidavits, although made under oath, are ordinarily not considered competent evidence. *Saturnini v. Saturnini*, 260 Minn. 494, 110 N.W.2d 480 (1961); *Dillon v. Dillon*, 46 Wis.2d 659, 176 N.W.2d 362 (1970); *Whitman v. Whitman*, 28 Wis.2d 50, 135 N.W.2d 835 (1965).

SDCL 15–6–43(e) provides that "[w]hen a motion is based on facts not appearing of record the court *may* hear the matter on affidavits presented by the respective parties, but the court *may* direct that the matter be heard wholly or partly on oral testimony or depositions." (Emphasis added.) Thus, admitting depositions or oral testimony, in addition to affidavits, rests within the trial court's discretion. SDCL 15–6–43(e); 56 Am.Jur.2d *Motions, Rules, and Order* §§ 22–25 (1971); 60 C.J.S. *Motions & Orders* § 37(5) (1969); *Saturnini, supra*.

Every party, as a matter of right, is not entitled to oral testimony on every motion or on every issue of fact. Obviously, there are many cases where no oral testimony need be received and the trial court, in the exercise of sound discretion, may permit the trial of an issue of fact, involved in the motion, on non-oral testimony. *Saturnini, supra*. However, the trial court in exercising this discretion must be cautious to prevent a circumvention of justice.

## CHILD CUSTODY

Generally, a child custody determination, or the modification thereof, is too vital to be determined on the basis of affidavits. These issues are best decided on competent evidence which has been subjected to cross-examination. *Millea v. Millea*, 89 S.D. 112, 229 N.W.2d 95 (1975). In *Whitman, supra*, the Wisconsin Supreme Court addressed the propriety of using affidavits for determining child custody. That court stated:

> While we do not say that an affidavit filed subsequent to a hearing in a custody matter cannot be considered under any circumstances, we do disapprove of materially disputed facts being presented in this manner. . . .

The quotation that follows goes beyond a fair criticism of the record in this case, but illustrates the importance of sworn testimony as contrasted to affidavits in child custody cases:

> 'The plaintiff further contends that the trial court, in determining this controversy, proceeded in an unwarranted manner, in that no hearing such as ought to have been had in so important a matter was in fact had. The whole hearing was conducted quite informally and without an opportunity to make a record or without a record in fact being made. We think the procedure adopted by the court in this important matter is justly subject to criticism. Judgments in divorce cases should not be so modified as to the custody of a child or children. In such a case, where a contest exists, and especially where a hearing is demanded, a hearing should be given. The witnesses should be sworn and an opportunity given to cross-examine them. The testimony should be taken by the reporter so that a record may be made in case either of the parties desires to appeal and have such order reviewed. We have not before us in this appeal any record of what was said by the attorneys, what informal conversations were had between the court and the witnesses, what testimony, if any, was given, and what in fact the court acted upon. In a matter of such vital con-

cern to the parties and to the child whose interests are of paramount importance, a record should be made to the end that a party may not be denied an effective appeal.' *Smith v. Smith* (1932), 209 Wis. 605, 610–11, 245 N.W. 644, 646.

*Whitman*, 28 Wis.2d at 60–61, 135 N.W.2d at 840.

Likewise, the Minnesota Supreme Court in *Saturnini, supra,* stated:

Due process requires that the hearing be fair, practicable, and reasonable. Where change of custody of minor children is involved it is usually incumbent upon the court to determine the fitness or lack of fitness of a parent. In contested cases it is difficult to see how such a determination could properly be made by relying solely upon affidavits. Modification of support payments, on the other hand, generally requires only a showing of change in either need on the one side or ability to pay on the other. In most situations these determinations can fairly be made without taking oral testimony. Where the facts are complicated or the affidavits so conflicting as to render cross-examination essential, then the desirability of expeditious procedure must give way to a more formal hearing.

*Saturnini*, 260 Minn. at 498, 110 N.W.2d at 483, We agree with the Wisconsin and Minnesota courts, and conclude that the use of affidavits alone in determining a request for custody modification is inappropriate, absent a clear showing on the record that oral testimony is not necessary. Considering the serious nature of the allegations and accusations that the parties have made against each other, coupled with the extreme importance of the issues involved, the trial court abused its discretion in making its determination based solely on affidavits. Therefore, on remand, the custody issues are to be properly presented to the trial court.

## PROPERTY DIVISION

■ Not all issues of property division require an evidentiary hearing. However, when, as here, trial courts are confronted with clearly disputed facts with generally complicated claims, affidavits are not sufficient. *See generally Saturnini, supra; Dillon, supra;* 2A C.J.S. *Affidavits* §§ 56–58 (1972).

As in the child custody modification issue, the parties made serious conflicting allegations and cross-allegations by affidavit. These affidavits, counsels' correspondence, and the numerous attached exhibits have not been subjected to cross-examination or other scrutiny properly afforded through the usual evidentiary processes. It was truly a "trial by affidavit," which we cannot condone or accept.

Normally, in view of the remand, we would not need to further address the property issue. However, in view of the unique circumstances here, we must give additional guidance and direction to the trial court.

■ As stated earlier, the parties agreed to, and the trial court approved in its decree of divorce, an arrangement whereby the net proceeds of the sale of the property were to be divided equally. The trial court later, in essence, amended that decree when it entered its order regarding the "Terms and Conditions of Occupancy, Maintenance and Use of the Marital Home and Land." [3] It further appears to have modified the decree in the interim order by requiring husband to quitclaim his interest to wife and giving her absolute authority to sell the property. Then, in its last order, the trial court further amended the decree by determining the amount of husband's equity to be something less than half of the net proceeds and awarded a civil judgment against husband for the difference.

Because of the nature and condition of the record, we are unable to ascertain whether the trial court had jurisdiction to enter such an order. It is settled law, as

---

**3.** This "amendment" or clarification may have been proper as the original decree of divorce provided: "The parties will execute a separate agreement relating to the handling of matters affecting the real property until such time as it is sold, setting forth their respective rights and responsibilities.... If the parties cannot agree on the terms and conditions of this agreement, the matter shall be submitted to the court."

stated in *Blare v. Blare,* 302 N.W.2d 787, 790 (S.D.1981), that:

In the absence of fraud or other reasons that would apply to any judgment, a divorce decree that divides or allots property or provides for payment of a gross sum in lieu thereof is a final and conclusive adjudication and cannot be subsequently modified. *Holt v. Holt,* 84 S.D. 671, 176 N.W.2d 51 (1970); *Van Diepen v. Van Diepen,* 73 S.D. 366, 43 N.W.2d 499 (1950).

On remand, the trial court must first ascertain, under the guidelines of *Blare,* whether it had jurisdiction to enter its order and, if so, to articulate its findings and conclusions regarding such jurisdiction. Otherwise, wife must pursue her remedies through other more appropriate civil measures.

### CHILD SUPPORT, ALIMONY, AND ATTORNEY FEES

As stated in *Saturnini, supra,* modification of support issues, which generally involve a showing of change in need or ability to pay, may properly be heard by affidavit. *See also* SDCL 15-6-43(e). For the same reasons, issues dealing with alimony and attorney fees may be determined in such manner. *See generally McAlister v. McAlister,* 14 N.C.App. 159, 187 S.E.2d 449 (1972); *Miller v. Miller,* 270 N.C. 140, 153 S.E.2d 854 (1967).

Here, the non-oral testimony supports the findings, conclusions, and order of the trial court regarding these issues. We do not find them to be clearly erroneous or an abuse of discretion, *Wilson v. Wilson,* 399 N.W.2d 890 (S.D.1987); *Moore v. Moore,* 354 N.W.2d 732 (S.D.1984).

Affirmed in part, reversed in part and remanded.

MORGAN and SABERS, JJ., concur.

WUEST, C.J., concurs in result.

HENDERSON, J., concurs in part and dissents in part.

WUEST, Chief Justice (concurring in result).

I concur in the result reached by the majority, but do not necessarily agree with all the admonitions regarding the use of affidavits, although we must have a record to review.

HENDERSON, Justice (concurring in part, dissenting in part).

I agree with that aspect of the majority decision which reverses in part and remands in part the lower court's decision. I concur that the child custody and property division be reversed and remanded for oral testimony, deeper reflection, and more extensive findings of fact and conclusions of law.

However, I cannot agree that the child support should be affirmed for the reason that this Court has reversed the child custody determination. Therefore, when new and/or different testimony is taken below, as distinguished from trial by affidavit, a totally new/different determination, hypothetically, could be made by the trial judge. In appellant's brief, he exhorts the issue of child custody be remanded "to the trial court for the receipt of evidence and testimony with regard to this issue and the best interests of the children." It is illogical to affirm a money award of child support because the essence of the majority opinion is to return this case for a proper evidentiary hearing.

When oral testimony is heard, it is possible that the father is awarded custody of the children. Hence, we cannot bind the trial court to child support in a certain amount of dollars to be awarded unto mother by father.

We are saying in one breath to the trial judge, open the door and your mind by oral testimony on the child support issue, and yet we are affirming the lower court on award of money for child support unto the mother.

As I understand the decision, the property division is not being affirmed; if it is not being affirmed, it is being reversed, for, indeed, there is a remand for a redetermination. The majority opinion characterizes

this as "additional guidance and direction to the trial court." It is obvious that the trial court, from the recitation as depicted in the majority opinion, did not follow the precedent of *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981). Once we vault the mental hurdle that the property division has been reversed and is to be redecided below, we turn our minds to *Krage v. Krage*, 329 N.W.2d 878 (S.D.1983). Property division and alimony are to be considered together.

Alimony should not be isolated nor should the property division be isolated. It is well established precedent in this Court that the two are to be considered together. Reasons behind this rule are well grounded in that a property award could be so great that alimony was not justified; or that an alimony award should be justified because the property division for a party is meager. Therefore, I disagree heartily with the majority opinion on affirming alimony and would therefore reverse and remand that issue to be determined in light of the developments on the property division issue. If not considered together, alimony in this case becomes an island unto itself, broken away from the equitable package—floating without judicial firmament.