**Barrie Ira BLOOM, Appellant (Plaintiff),**

v.

**Mona L. BLOOM, Appellee (Defendant).**

**No. 89–229.**

Supreme Court of Wyoming.

Oct. 3, 1990.

James E. Burke and Rhonda Sigrist Woodard of Hanes, Burke & Woodard, P.C., Cheyenne, for appellant.

Mitchell E. Osborn of Grant & Osborn, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Barrie Ira Bloom (husband) appeals from an order of the district court which denied his motion to enforce certain provisions of a divorce decree which he contended appellee Mona L. Bloom (wife) was not following. His principal concern is that the district court did not provide him with a hearing and, thus, he was denied due process of law. We agree that a hearing was necessary and reverse the order of the district court.

Husband states these issues:

I. Whether the court erred in entering its order on appellant's motion to enforce provision of judgment and decree and post decree order and appellee's counterclaim and motion for decree modification without providing appellant a hearing.

II. Whether the court erred in modifying the time of appellant's weekend visitation without a request by appellee, without a showing of substantial changes in circumstances justifying the modification and without a showing that such modification was in the best interests of the child.

III. Whether the modification of the weekend visitation and the refusal of the court to enforce appellant's right to have his son for all the major Jewish holidays was an abuse of discretion since the divorce decree specifically required that the child be raised in the Jewish faith.

IV. Whether the court's order requiring appellant to pay appellee $2000 to resolve the real property issues was based on insufficient and disputed evidence.

In response, wife contends:

I. Appellant was provided an opportunity to be heard, therefore, the court did not err in entering its order without having received oral evidence.

II. The issue of modifying the time of appellant's weekend visitation was properly before the court by request of the appellee, and a showing of substantial change in circumstances was made by appellee, and a showing was made that such modification was in the best interests of the child.

III. The modification of the weekend visitation and the refusal of the court to enforce visitation not granted in the decree was not an abuse of discretion.

IV. The court's order requiring appellant to pay appellee $2000.00 to resolve the real property issues was based upon sufficient evidence.

## FACTS

A decree of divorce was granted to the parties on December 30, 1986. The decree contained a provision that the parties' child was to be raised in the Jewish faith and that husband was to have visitation with

the child on each major Jewish holiday. The dates for those holidays in 1986 and 1987 were included in the decree, but three were lined-out and only wife's counsel's signature appeared by the lined-out dates. The decree also provided that the parties were to sell their real property and divide the proceeds equally. At the original divorce hearing, the district judge admonished wife in particular, but also husband, for not working the issues out more satisfactorily and responsibly in the best interests of their child. It is clear from the transcript of the original proceeding that there were many loose ends unresolved with regard to visitation and disposal of the real property.

On May 6, 1987, husband filed a motion to find wife in contempt of the decree. He claimed that wife: would not provide him with a phone number so he could have his regularly scheduled telephone visits with his son; would not disclose her address or the address of his son; and required husband to pick up and deliver the child to the Cheyenne police station rather than at their respective residences as provided for in the decree. Wife denied husband's claims and counterclaimed that he had: violated the decree by not timely paying child support; not divided the parties' personal property as provided for in the decree; harassed wife on a regular basis; and failed to make required payments on one piece of the real property owned by them. This dispute was settled by the district court on January 25, 1988. It is apparent that the district court used a procedure to decide this case which has subsequently been held to be unsatisfactory. *Foster v. Foster*, 768 P.2d 1038 (Wyo.1989). However, no appeal was taken from that order of the district court.

On October 27, 1988, husband filed a motion to enforce the divorce decree. That matter was not decided until June 29, 1989, and was disposed of by the district court on briefs, affidavits, and other written documentation. No hearing was held. We find it unnecessary to recite in detail all the charges and countercharges made by each of the parties. They were voluminous and we cannot quarrel with the district court's conclusion that this was "an absurd fight."

However unfortunate it might be, it is not unusual for custody, support and visitation issues to remain alive for years, if not decades. Children become the unfortunate pawns in their parents' battles. Nonetheless, our tradition is that such disputes are resolved in courts of law, after the parties have been accorded due process.

Ultimately, the district court awarded wife $2,000 to settle the real property dispute and left the visitation schedule exactly as it was in the original decree, with the exception of changing the pick-up time from 5:00 p.m. Friday to 6:00 p.m. on Friday. This change was made to accommodate wife's work schedule and husband claimed it made it impossible for he and his son to attend Friday evening religious services.

## DISCUSSION

■ The governing statutes contemplate that additional proceedings may likely be necessary in child support and custody matters. W.S. 20–2–113(h) (Cum.Supp.1989). Such proceedings are a continuation of the original divorce decree, although they do have some attributes of a separate and distinct matter. *Nicholaus v. Nicholaus*, 756 P.2d 1338, 1341–42 (Wyo.1988). We have held that child custody and visitation matters involve a fundamental right, that of association with one's immediate family. *Hall v. Hall*, 708 P.2d 416, 421 (Wyo.1985). Moreover, our decisions are clear that as a general rule proceedings for modification of a custody decree require an opportunity to be heard. *Id.; Tanner v. Tanner*, 482 P.2d 443, 445 (Wyo.1971); 4 J. McCahey, M. Kaufman & C. Kraut, Child Custody & Visitation Law and Practice, § 25.02[2][b] (1990). *See also Foster*, 768 P.2d at 1041. There are circumstances where we have found an abbreviated hearing sufficient to have provided due process, or at least sufficient enough to constitute only harmless error. *Hall*, 708 P.2d at 421–22; *and see Yates v. Yates*, 702 P.2d 1252, 1254–55 (Wyo.1985).

■ Here, no hearing at all was held and husband was justifiably surprised to find

the district court entering an order disposing of his claims without his having been given an opportunity to present all relevant, noncumulative evidence that supported his cause. The visitation issues were hotly contested and husband's assertion that modification of Friday visitation, for the limited purpose of accommodating wife's work schedule, irreconcilably frustrated that portion of the decree which requires that the child be raised in the Jewish faith. While there may be custody/visitation cases which require only limited testimony or testimony primarily documentary in nature and a formal hearing before the judge may not be necessary if the parties so agree, this is not such a case. *See Dixon v. Dixon*, 423 N.W.2d 507, 509–11 (S.D.1988).

■ We note as well that the district court appears to have modified the property settlement, as opposed to enforcing it or resolving an ambiguity. From the record, it is not entirely clear what the district court did effect. However, we note that a district court does not have jurisdiction to modify what is, in essence, a money judgment. *McMillan v. McMillan*, 702 P.2d 1279, 1281–82 (Wyo.1985).

Reversed and remanded with instructions that the district court afford husband a meaningful opportunity to present evidence to the district court in a formal hearing setting.

URBIGKIT, C.J., filed a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

Because I am convinced of the great potential for mischief spawned by this micro-management of trial discretion in divorce decisions and because I remain unconvinced that the hearing now required by this court can add any substance to the recorded history of histrionics and character assassinations endured by the district court judge, I must dissent. To illustrate why a hearing does not appear necessary, I lay before the reader a sampling of what the district court judge had before him.

Barrie Bloom filed a divorce complaint against his wife Mona on March 24, 1986. Following an answer, a counterclaim and a reply, he moved for temporary custody. The divorce trial was held on November 4, 1986. The only record presented is the district court's discussion with counsel after the evidence was closed and the divorce decree filed December 30, 1986, which laid out the terms of the divorce—custody, child support, visitation rights and property settlement.

The litigative silence ended in May 1987 when Barrie filed a motion to find Mona in contempt. He alleged several intrusions on his visitation privileges which included Mona's requirement that the exchanges of their two and one-half year old son occur at the Cheyenne Police Station.[1] Mona filed a general denial response including denial of the police station exchange requirement. Mona introduced the following in her counterclaim:

3. Plaintiff is in violation of paragraphs 11 and 14 of the Judgment and Decree of Divorce, in that he refuses to either divide into two (2) lots the remaining furniture, appliances, household goods, camping equipment and skis of the parties and further refuses to choose between the two (s) [sic] lots divided by Defendant.

4. Plaintiff has engaged in a course of harassment of Defendant by threatening to evict her from the residence located at 3010 Reed Avenue, Cheyenne, Wyoming, which premises has been ordered to be sold by the captioned parties. Plaintiff has caused Defendant to voluntarily reside elsewhere due to this harassment.

5. Plaintiff has engaged in perpetual violation of paragraph 2 of the Judgment and Decree of Divorce by failing to make child support payments on the first day of each month and, in fact, has proceeded to make each child support payment ap-

---

1. This extended record is replete with argument and contentions about Barrie's abusive and vulgar manner during times when the parties met for the transfer of their son for visitation.

proximately two weeks late, causing financial inconvenience for Defendant.

6. Plaintiff has continued on a course of harassment of Defendant by lingering and loitering around Defendant at the time of exchange of the parties' child, Samuel Bloom, for visitation purposes, causing Defendant to require a neutral place of exchange for visitation.

7. Plaintiff has failed to abide by the terms of paragraph 7 of the Judgement and Decree of Divorce by failing to make the monthly mortgage payment on the unimproved twenty (20) acres of land in the Spring Creek Ranch as provided in subparagraph (a) of the aforementioned paragraph 7.

She sought compliance with the divorce decree.

This flurry of litigation was channelled by the district court to the court commissioner who customarily conducts hearings for this type of post-decree conflict in the trial jurisdiction. Both parties had changed attorneys by this time. The commissioner's post-decree order, approved and executed by the district court, provided in part:

1. Neither Plaintiff nor Defendant are in contempt of Court and no citation for contempt will be made upon the Motions presently before this Court.

2. Plaintiff, Barrie Bloom, shall deliver the radial arm saw to Defendant, Mona L. Bloom, within ten (10) days of this Order and should he fail to do so, she will be entitled to possession and title of the parties' freezer.

3. Plaintiff has refrained from harassing Defendant in the preceding month and is ordered to continue to refrain from harassing Defendant.

4. Plaintiff is bound by the original Decree to make all mortgage payments on the parties' real property until said property is sold and Plaintiff shall be liable to any loss suffered by Defendant, Mona Bloom, as a result of his failure to make said payments and further he shall not be entitled to any set-off for late payments or additional interest charged as a result of his failure to make said mortgage payments on a timely basis and he will not receive those monies as a reimbursement out of proceeds realized from sale of the real property.

5. Plaintiff shall execute whatever document is required to transfer title to the parties' Jeep to Defendant.

6. Visitation exchange shall continue by Defendant delivering and picking up the parties' son, Samuel, from the residence of Plaintiff, Barrie Bloom.

7. Child support payments shall be made by Plaintiff on the 1st day of each month, or before, and should Plaintiff become in arrears by thirty (30) days of making any child support payment a withholding order shall be issued by this Court whereby Plaintiff's wages will be garnished month to month for said child support payments.

The post-decree order accomplished little because an order to withhold a portion of Barrie's income, so that his young son might receive some financial support, followed thereafter by entry in February, 1988. By this time, Barrie had retained his third attorney to file another motion to enforce the provisions of the divorce decree and post-decree order, stating in part:

1. The parties were divorced by Judgment and Decree filed December 30, 1986. Pursuant to the terms of the Judgment and Decree, the parties were ordered to sell the real property owned by them at 1219 Cosgriff Court, Cheyenne, Wyoming, in addition to other real property, as soon as reasonably possible and, after payment of costs of sale, outstanding mortgages, and the amounts paid by Plaintiff on the mortgages (after credit for rents received), the equity would be equally divided between the parties. The Judgment and Decree specifically authorized either of the parties to buy out the other.

2. Since that time, the real property at 1219 Cosgriff Court has been listed for sale with a licensed real estate company and Plaintiff has continued to make the mortgage payments. Although two offers have been made by third parties in the past, these offers have not been ac-

ceptable to Defendant and the house has not been sold.

3. On or about September 27, 1988, Plaintiff offered to refinance and pay Defendant her interest in the real property determined under the provisions of the Judgment and Decree at a sale price which was established by appraisal obtained from Wyoming Appraisers. Plaintiff proposed a normal division of closing costs between the parties.

4. Although Plaintiff gave Defendant a deadline of October 4, 1988, to respond to the offer, Defendant has failed to do so, and it is not reasonable to require Plaintiff to continue making mortgage payments and/or pay for repairs which are necessary to the home when Defendant refuses to cooperate to sell the home.

5. To Plaintiff's knowledge, Defendant has taken no action on her part to sell the real property, and unless the Court allows Plaintiff to pay Defendant her interest in the property and receive total ownership, it is unlikely this matter between the parties will be resolved in the near future.

6. Further, Defendant refuses to allow Plaintiff to exercise visitation rights with the minor child during some of the major Jewish holidays which were originally listed in the Judgment and Decree and which were "lined out" by Mr. Cole, who was Defendant's attorney at the time of the divorce. This interlineation was never approved by Plaintiff or his attorney and is not consistent with the intent of the Court as stated at the trial of this matter. Defendant refused to allow Plaintiff to have the child during Thanksgiving 1987, although it was Plaintiff's day off and he should have had him.

7. The Post–Decree Order filed in this case on January 5, 1988, requires Defendant to deliver and pick up the parties' son, Samuel, from the residence of Plaintiff for visitation. Not only does Defendant refuse to comply with this provision, but she requires Plaintiff to pick up and deliver the minor child, Samuel, at a fast-food restaurant in Laramie where Defendant currently resides. On three occasions, Defendant has denied Plaintiff his telephone visitation with the child.

8. The Judgment and Decree specifically orders that the child shall be raised in the Jewish faith. Plaintiff has advised Defendant of the child's enrollment in Sunday School at the Jewish Synagogue in Cheyenne, however, Defendant refuses to make arrangements to have Samuel attend those classes during the weekends that she has him in her custody and does not make the child available for festivities important to the Jewish faith.

He also moved for the right to purchase the home,[2] secure additional Jewish holidays, and:

3. That Defendant be ordered to deliver and pick up the minor child at Plaintiff's residence for his visitation, that she not interfere with Plaintiff's telephone visitation, and that she make appropriate arrangements for the minor child to attend Sunday School classes at the Jewish Synagogue every Sunday unless the child is ill or weather conditions make such travel unsafe.

Mona again generally denied and countered with another counterclaim alleging and stating:

5. Plaintiff is in arrears for past child support and Defendant should have judgment against Plaintiff for that arrearage as it exists at the time of hearing of these matters.

6. Plaintiff, in violation of the original Divorce Decree and the Post–Decree Order, allowed the parties' real property at Spring Creek Ranch, Tracts 2, 3, 16 and 17 to be taken back by the seller due to Plaintiff's failure to make payments on the mortgage or contract.

7. Due to Plaintiff's failure to make the payments on the Spring[ ] Creek property, Defendant has lost approximately Two Thousand Five Hundred Dol-

2. c. All of Lot Seven (7) in Block (15) Fifteen, in Park Addition, First Filing, to the City of Cheyenne, Laramie County, Wyoming. Also known as 1219 Cosgriff Court.

lars ($2,500.00) in equity on said payment.

8. Defendant should have judgment against Plaintiff for the damages she has suffered as a result of Plaintiff's failure to make payments on the Spring Creek property.

\*     \*     \*     \*     \*     \*

9. There has been a change in the circumstances of the parties since the date of the original Decree of Divorce in this matter and also since the entry of the Post Decree Order and said Decree and Order should be modified as to the Court appears proper and just due to the change in circumstances.

10. The change in circumstances of Defendant and the parties' minor child, Samuel, is their change of residence from Cheyenne to Laramie, Wyoming.

Barrie's reply, in addition to denials, stated in part:

1. With regard to Paragraph 5 of the Counterclaim For Judgment, Plaintiff admits that in the past he was in arrears for a portion of his child support payments. However, he believes these payments are now current, except for the month of December, 1988, which should be current before the end of December, 1988, due to the wage assignment already in effect.

2. Plaintiff admits that portion of Paragraph 6 which alleges that the parties' real property at Spring Creek Ranch, Tracts 2, 3, 16 and 17, was taken back by the seller. However, he denies the remaining allegations of that paragraph.

\*     \*     \*     \*     \*     \*

4. Plaintiff admits that portion of Paragraph 10 which alleges that Defendant and the parties' minor child, Samuel, have changed their residence from Cheyenne to Laramie, Wyoming. However, Plaintiff denies the remaining portion of Paragraph 10 and Paragraph 9 which alleges that this is a change of circumstances which justifies a modification of the decree of divorce and post-decree order.

\*     \*     \*     \*     \*     \*     \*

6. It was impossible for Plaintiff to sell the real property at Spring Creek Ranch for any amount greater than the remaining contract balance due. Plaintiff offered to give Defendant all interest which he had in the Spring Creek Ranch property. However, she refused said offer and has waived any right to claim amounts due and owing to her by Plaintiff.

7. Defendant is estopped from raising the claims set forth in her Counterclaim For Judgment and Motion For Decree Modification.

8. All child support obligations by Plaintiff are being satisfied by the wage assignment which Defendant has previously obtained.

Responding to this collection of antagonistic contentions of these litigants, the district court signed an order for memoranda on motions stating:

Plaintiff having filed and requested setting on Motion to Enforce Provisions of Judgment and Decree and Post–Decree Order;

ORDERED: that the plaintiff shall file memorandum brief no later than February 15, 1989 and defendants [sic] shall file response no later than March 8, 1989. Copies are to be delivered to the judge's office, attention motion's clerk. *The Court will set hearing, if necessary, after consideration of the filings.*

(Emphasis added.)

*These pleadings and the last sentence of the briefing order of January 27, 1989 frame my understanding for why I find no fault with the district court action in rendering its decision.*

Barrie filed a six page memorandum on February 15, 1989. No evidentiary record of prior hearings existed so contentions of fact regarding evidentiary submissions in prior district court sessions were unavailable. Barrie filled that vacuum with forty-one pages of affidavit, pleadings, documents and correspondence.

Mona responded in kind with an affidavit and exhibits consisting of fifteen pages and an array of documents which included affidavits by her father and her boyfriend.

Barrie responded with a six page affidavit along with affidavits by his girlfriend and two realtors.

Mona, not to be outdone, responded with an eight page affidavit. Barrie countered with another affidavit which now closed the exchange on April 17, 1989.

On May 11, 1989, the district court entered a decision letter based on the memoranda and affidavits. Apparently, the litigants could not agree to the terms of the order and, on June 29, the district court entered an order on Barrie's motion to enforce the provisions of the judgment and decree and post-decree order and Mona's counterclaim for judgment and motion for decree modification, which stated:

THIS MATTER having come before the Court upon Plaintiff's Motion to Enforce Provisions of Judgment and Decree and Post–Decree Order and upon the Defendant's Counterclaim for Judgment and Motion for Decree Modification, and the Court having Ordered the respective parties to submit memoranda with supporting affidavits, and the Court having examined all such memoranda and affidavits, along with the entire record of this matter, and the Court being otherwise fully advised in the premises, hereby finds and orders as follows:

IT IS ORDERED THAT:

1. The original property division is final and not subject to amendment or revision by the Court. However, provisions of the decree must be enforced. The property should have been sold a long time ago. Mrs. Bloom should not have refused the offers that were made. Since she did, she cannot now be heard to complain that Mr. Bloom is living there, rent free. It does not appear that she has much, if any, equity in the Cosgriff property under the terms of the decree.

2. Mr. Bloom should not have allowed default in the mortgage in the Spring Creek property and having done so, he can not now claim that she is entitled to no consideration for this.

3. In view of number[s] 1 and 2, Mr. Bloom will pay Mrs. Bloom an amount of $2,000.00 for which he will be entitled to a quit claim deed of her interest in the Cosgriff property as well as being deemed to have satisfied any liability between the parties in connection with his mortgage default on the Spring Creek property. He can then keep or sell Cosgriff as he pleases.

4. At the time of the hearing, it was clear that Mr. Bloom's keen interest in observance of the Jewish holidays was newfound and not exactly ardent in its intensity. Nevertheless, the provision was in the Decree, but neither Mr. Bloom nor his attorney were able to provide the Court at the time of his hearing with an enumeration of the Jewish holidays. The holiday stricken from the proposed Decree resulted in the Decree being entered with that deletion. It was a final order and no appeal was taken. Therefore, the Court declines any attempt to reinstate the deleted holidays. Mrs. Bloom is not required to see to the attendance at Sunday School on weekends when she has Samuel with her. If, in fact, she is telling people that "Samuel is half Christian and half Jewish" she is naughty but I can do nothing about it. Thanksgiving is supposed to [be] one of the major holidays that alternate.

5. Each party, as apparently now is the practice, will be responsible for transporting Samuel one way for visitation. The arrangements will be as outlined in paragraph 26 of Mrs. Bloom's affidavit. Visitation will commence Fridays at 6:00 p.m., rather than 5:00 p.m.

6. Each party shall be responsible for their own respective attorneys fees.

On July 10, 1989, Barrie filed a motion to amend the findings and judgment, or in the alternative, for a new trial following application of the deemed denied rule (Uniform Rules for the District Courts 301) which had commenced time for filing a notice of appeal in August. An appeal was taken in September—bringing the Bloom controver-

sy, after three and one-half years in district court, to this court for the first time.

I wonder whether the reader may now be confused about the issues presented in this appeal for which the claim of a procedurally denied "hearing" is used to circumscribe our general law on trial court discretion in divorce decisions. *Gaines v. Doby,* 773 P.2d 442 (Wyo.1989); *Connors v. Connors,* 769 P.2d 336 (Wyo.1989); and *Mentock v. Mentock,* 638 P.2d 156 (Wyo.1981). Clearly, Mona had lost the most in the third decision of the district court, but this appeal involves only those concerns which anguished Barrie.

Mona had moved to Laramie and works until 5:00 p.m. Barrie argued that he had to pick up his son at exactly 5:00 p.m. in order to reach the synagogue in Cheyenne on time. Mona argued that she needed time after the end of work to pick up their child and make arrangements for the visitation with his father. Barrie alerts us to this problem:

> 4. The modification of the Friday visitation time interferes with Mr. Bloom's ability to take his son to Friday evening services at the Jewish Synagogue in Cheyenne. This interferes with his ability to raise Samuel in the Jewish faith. There is no evidence to indicate that the change of time is in Samuel's best interests, and there is no evidence indicating a change of circumstances justifying this modification.

The other argument for which the expenses of this major appeal have been invested is the compensatory $2,000 payment resulting from Barrie's default in mortgage payments on the Spring Creek Ranch property while he claimed and actually received complete ownership of the residence at 1219 Cosgriff Ct. in the district court's third decision.

I find no fault with the assessment of a $2,000 surcharge against Barrie for permitting foreclosure of jointly owned property when the divorce decree required he maintain mortgage payments. That subject does not, however, motivate this dissent even though I question that the provision constitutes a provision for money judgment when resulting from a default loss compensatory award for decree violation. I find enforcement assessment or monetary responsibility after a litigant fails to comply with a divorce decree very different from a "decree modification." This was enforcement not modification. *Connors,* 769 P.2d 336. *Cf. Dorr v. Newman,* 785 P.2d 1172 (Wyo.1990).

What concerns me most is for what the "hearing" will be used.[3] I see no issue of fact presented for which either additional evidence or oral argument will assist or inform the district court. In many cases, trial type evidentiary hearings and oral argument to support a motion can only further burden the district court's schedule. This is the premise of summary judgment. *Bryant v. Hornbuckle,* 728 P.2d 1132 (Wyo.1986).[4]

Neither citation of authority nor substantive discussion can commend this result by the majority. In *Tanner v. Tanner,* 482 P.2d 443 (Wyo.1971), briefing and affidavit evidence was not granted. The issue here is not Barrie being denied his right to defend, where denial of that right is a denial of due process, but on Barrie's claimed right to present more personal testimony after submitting all his other memoranda. Notice to identify what was before the district court was clearly here for comprehensive litigant exposure and explanation. *Cf. Bjugan v. Bjugan,* 710 P.2d 213 (Wyo. 1985) and *Hall v. Hall,* 708 P.2d 416 (Wyo. 1985). I question that Barrie had not presented all of his relevant non-cumulative

---

3. The absurdity of argument about the original divorce decree involving alleged deletion of some holidays does not justify more comment than was accorded by the district court in its third decision order.

4. I do not recede from my analysis and philosophy that avoidance of hearing and trial by summary dispositions are usually not appropriate if

material issues of fact exist. *Davenport v. Epperly,* 744 P.2d 1110 (Wyo.1987); *Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986). Here, however, I fail to see what dirty linen remains unexposed or what factual conflicts remain for further address by testimony and oral argument.

evidence in the three exhaustive and argumentive affidavits and expanded attachments. I believe he had an adequate opportunity to argue material events which were never in conflict. In one query, the district court resolved the necessity of Mona's work schedule with Barrie's need for timely arrival to the synagogue. In another query, the district court analyzed compensating the party against whom the default in divorce decree performance had been imposed by the other party.

The real factual dispute of this record was resolved adversely to Mona by her loss of an interest in the residence. Faced with a cross-appeal, I might have considered district court mistake and abuse of discretion in that regard, but that aspect of this appeal does not appear in the issue of the time delay in visitation to permit the mother to leave work, pick up the child and prepare for visitation. No issue of *fact* exists.

Similarly, with regard to the Spring Creek Ranch property, there is no argument or issue but that Barrie permitted default and foreclosure. Any decision in either regard by the district court is vested in questions of law and pure exercise of domestic relations discretion.[5]

The mandatory rule for oral evidence and counsel argument apparently may reach far beyond this particular occurrence. In any event, for this case, I see no benefit and would affirm the action of the district court.

---

**5.** In memoranda and affidavits, litigants address the Jewish faith controversy and visitation in more than fifty paragraphs. Although the opinion *extends* substantially beyond the current subjects of this appeal while arising from a factual situation which was surprisingly similar, litigants might be informed and counsel assisted by the comprehensive discussion in *Zummo v. Zummo,* 574 A.2d 1130 (Pa.Super.1990).