MARY LOUISE MOORE, petitioner-appellee, v. MILLARD LEE MOORE, respondent-appellant.

## No. 50111.

(Reported in 107 N.W.2d 97)

JANUARY 11, 1961.

Pryor, Riley, Jones & Walsh, of Burlington, for appellant.

T. K. Ford, County Attorney, of Burlington, for appellee.

THOMPSON, J.—The petition alleges that the petitioner was formerly the wife of the respondent, and the parties are the parents of three dependent children; that petitioner and the children are entitled to support from the respondent under the Uniform Support of Dependents Law; that respondent has refused to provide fair and reasonable support; and that he is now a resident of Des Moines County, Iowa. There was also filed a certificate of a judge of the Circuit Court of Morgan County, Alabama, stating that he had examined the petitioner under oath, that according to her testimony the dependents named in her petition need support from the respondent in the sum of $75 per month, and in his opinion the petition sets forth facts showing a duty of support. An order of the Alabama court directing copies of the testimony of the petitioner, of the petition, the judge's certificate and of the applicable Alabama law be transmitted to the Des Moines County court was also filed.

These papers being presented to the District Court of Des Moines County on November 10, 1959, it was ordered that the matter be set for hearing at the courthouse in Burlington on November 20 next, at 10 a.m. The clerk of the court was directed to issue a summons in accordance with the order fixing time and place and cause it to be served on the respondent forthwith. This was done, and it brought forth a special appearance, filed by the respondent and raising two questions. The special appearance was overruled by the trial court, and the cause proceeded to hearing. No answer was filed by the respondent, and he was not required so to do. The court considered the testimony of the petitioner given before the judge of the Alabama court as attached to the certificate of that court, and the evidence offered by the respondent, which consisted of his

own testimony and an exemplified copy of a divorce decree rendered by the City Court of the City of Moline, Illinois, on January 9, 1958, which granted a divorce to the respondent from the petitioner. In this action the petitioner, who was the defendant therein, appeared by her attorney and waived service. Therein the respondent was ordered to pay $50 per month for support of the minor children.

The trial court then entered its order and judgment directing the respondent to pay the sum of $65 per month for the support of the three children until further order. From this respondent appeals. The questions raised concern the denial of his special appearance.

I. Two major and difficult questions are raised by the special appearance. The first, which we shall consider in this division, denies jurisdiction of the person of the respondent. It concerns the manner in which the respondent was notified of the proceeding. This was done by a paper denominated a "Summons", served on respondent on November 13, 1959, which notified him that a petition was on file in the office of the clerk of the court in accordance with chapter 252A of the Code of 1958 asking an order requiring him to contribute to the support of the three minor children. He was further notified that the petition would come on for hearing on November 20, 1959, at 10 a.m. at the courthouse in Burlington. So far as the record shows this paper was issued by the court and was not signed either by the petitioner or her attorney.

The able trial court held that the manner of notification of the respondent was sufficient, basing this apparently upon the thought that since this is an attempt to compel a father to contribute to the support of his minor children the procedure is governed by section 232.25 of the Code, which deals with an alternative means, under the Iowa law, of ordering such support. It is found in the chapter on Neglected, Dependent and Delinquent Children, and says that "in any proceeding hereunder relative to a neglected or dependent child, [the court] shall have jurisdiction on reasonable notice to the parents of said child, to inquire into the ability of said parents to support said child and make all proper orders in reference thereto."

So the court reasoned that the twenty-day period fixed by our Rules of Civil Procedure for acquiring jurisdiction of defendants does not apply. The question is not free from doubt, but for reasons hereinafter set out we are unable to agree.

Chapters 232 and 252A, it is true, both deal with dependent children and section 232.25 fixes a summary means of acquiring jurisdiction over the parents for support purposes. But the effect of this so far as it provides a means of summary notice to a parent under chapter 252A is destroyed, if it may be said ever to have existed, by a consideration of the history of the present chapter 252A, particularly the present section 252A.6(4). Prior to 1955 it was provided by section 252A.6(4) of the Code of 1954: "Any judge of a court in the county of the responding state in which the respondent resides or is domiciled or found, upon presentation to him of such certificate and exemplified copies of such petition and summons, shall fix a time and place for a hearing on such petition and shall issue a summons out of his court, directed to the respondent, duly requiring him to appear at such time and place."

It will be observed that this manner of obtaining jurisdiction was very much like that provided by chapter 232.25, supra. But the Fifty-sixth General Assembly in 1955 struck this paragraph from the statutes, and enacted in lieu thereof its section 7 of chapter 129 of its Acts, which now appears as section 252A.6(4), supra. So far as material this section and paragraph now says: "When the court of this state, acting as a responding state, receives from the court of an initiating state the aforesaid copies, it shall docket the cause, notify the County Attorney or other official acting as petitioner's representative, set a time and place for a hearing, and take such action as is necessary in accordance with the laws of this state to serve notice and thus obtain jurisdiction over the respondent. * * *."

The parties agree that this is a civil action. It seems clear the legislature had some purpose in changing the manner of acquiring jurisdiction, and with that purpose we have no concern. It might have left it as it was: that is, by fixing a time and place and issuing a summons requiring the respondent to appear then and there. But it has made a change which we

think is significant and must be followed. It could have fixed any reasonable notice; it chose to say that notice must be served and jurisdiction acquired "in accordance with the laws of this state". This being a civil action, we think it appears the legislature meant in accordance with the Rules of Civil Procedure, and we cannot look to another chapter and statute for the manner of acquiring jurisdiction, even though it be a closely related one.

The law governing service of notice in civil actions and their required contents is found in R. C. P., numbers 49 to 53 inclusive. Applying them, it is clear no jurisdiction of the respondent was acquired here. The time given was not the necessary twenty days, the notice, assuming the "summons" to be notice, as section 232.8 provides, was not signed by the petitioner or her attorney, and in other respects failed to meet the requirements of the rules. In Pousson v. Superior Court, 165 Cal. App.2d 750, 754, 332 P.2d 766, 769, the California Appellate Court for the Fourth District dealt with an identical problem. Their statute is identical with our present section 252A.6(4) on the method of acquiring jurisdiction in these cases. The court said that portion of the statute which directs the responding state to take such action as is necessary in accordance with the laws of this state to acquire jurisdiction "is a legislative direction to the person initiating the action to follow the general procedure provided for the acquisition of jurisdiction in ordinary civil actions * * *." We agree with this, and think the reasoning is considerably strengthened in Iowa by the change made in the statute by the 56th G. A. No jurisdiction of the respondent was acquired by the procedure here followed.

II. The second question concerns jurisdiction of the subject matter. In short, it concerns the power of the trial court to make a different order as to the amount of support money than was provided by the Illinois divorce decree. That decree called for payments of $50 per month for child support; the order of the Des Moines County Court was for $65 per month. The respondent's contention is that the court of the responding state has no power to make another or different order from that

made by the state of the divorce; but it is conceded it may enforce it. The question is whether the Illinois court's decree is binding as to amount and the Iowa court may do no more than enforce it, or whether it may make a new and separate order for a different amount. The problem is a difficult one, and has been answered variously in different jurisdictions. However, it must be commented that not many courts have squarely considered it, and authority on either side is not abundant. Perhaps a study of the statute itself will be as helpful as an analysis of the decided cases. Although Division I above requires a reversal, we think the question of jurisdiction of the subject matter should be decided, in view of a possible retrial below.

The respondent relies much upon the doctrine of comity and the requirement for giving full faith and credit to the judgments of another state. But we think these have little application here. The statutes which we are considering are uniform and reciprocal. All states have adopted them. If, then, they fairly provide that support may be ordered in the responding state without regard to the orders or judgments of another state, such interpretation should be adopted. It is something to which all states have agreed, for the purpose, as our Act provides, of securing support in civil proceedings for dependent wives, children and poor relatives from persons legally responsible for their support. Section 252A.1.

Chapter 252A, supra, contains several enactments which throw some light upon the question whether the responding state, when an order for support has been elsewhere legally made, acts merely as a collector for the sums therein provided, or on the other hand may make its own order according to the facts shown on the hearing. We quote:

"Section 252A.3(1) A husband in one state is hereby declared to be liable for the support of his wife and any child or children under seventeen years of age and any other dependent residing or found in the same state or in another state having substantially similar or reciprocal laws, and, if possessed of sufficient means or able to earn such means, may be required to pay for their support a fair and reasonable sum according to

his means, as may be determined by the court having jurisdiction of the respondent in a proceeding instituted under this chapter."

"Section 252A.4(2) The court of the responding state shall have the power to order the respondent to pay sums sufficient to provide necessary food, shelter, clothing, care, medical or hospital expenses, expenses of confinement, expenses of education of a child, funeral expenses and such other reasonable and proper expenses of the petitioner as justice requires, having due regard to the circumstances of the respective parties."

"Section 252A.6(15) Any order of support issued by a court of the state acting as a responding state shall not supersede any previous order of support issued in a divorce or separate maintenance action, but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both."

"Section 252A.8 Additional remedies. This chapter shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter."

It will be noted that by these sections the respondent may be ordered to pay "a fair and reasonable sum according to his means, as may be determined by the court having jurisdiction" section 252A.3(1), supra; it may require him to pay sums sufficient to provide food, shelter and many other items of expense "as justice requires, having due regard to the circumstances of the respective parties", section 252A.4(2), supra; and any order made by the court of the responding state shall not supersede any previous order of support made in a divorce or separate-maintenance action, but "amounts * * * paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both", section 252A.6(15), supra; and "this chapter shall be construed to furnish an additional or alternative remedy and shall in no way impair any other remedy * * * available to the petitioner in relation to the same subject matter."

The respondent would qualify each of these provisions

by adding thereto "unless the amount of support has been determined by another court of competent jurisdiction:" or words to the same effect. But we find nothing in the statute which leads to this conclusion. In fact, the legislature was cognizant that another order may have been made elsewhere. It provided the order for support made by the court in this proceeding should not supersede any other order already made, but that any sum paid should be credited on both allowances. This provision would not be necessary if the court of the responding state is merely a collection agency to gather sums due under the previous order; the application of them to the former judgment would then be automatic. While the language on this point might be clearer, we think a reasonable interpretation of the entire Act fairly shows that it was intended to give an additional remedy, in the application of which the respondent court might make its own determination of the needs of the petitioning party and make such order as justice might require.

This was the holding of the Florida Supreme Court in Thompson v. Thompson, Fla., 93 So.2d 90. There a divorce had been decreed in Volusia County, Florida, with provisions for alimony and child support. The divorced wife, with the minor child, then removed to Connecticut, where she commenced proceedings under the Uniform Support of Dependents Law. These were referred to the courts of Duval County, Florida, where the respondent apparently resided, and where the petition was dismissed on the theory that the matter should have been referred to Volusia County because the divorce had been granted there. The Florida Supreme Court reversed, saying: "Clearly, if the duty of support sought to be enforced in that court [Duval County] was imposed by a divorce or separate maintenance decree entered by the court of another state, the Duval County court would have jurisdiction. * * * it appears to be the *duty* of support imposed by a divorce or separate maintenance decree (as distinguished from the *amount* of the support so decreed) that is enforced by the responding state under the Act in question." 93 So.2d 90, 93.

To the same effect is Whittlesey v. Bellah, 130 Cal. App.2d 182, 185, 278 P.2d 511, 514. A Nevada divorce, granted ap-

parently with full jurisdiction of the parties, had fixed $25 per month as the required child support to be paid by the respondent. Later the petitioner, then a resident of New York, brought proceedings there under the Uniform Support Act, and the New York Court ordered the papers transferred to the proper court in California, with a notation that $250 per month for child support was recommended. The petition was dismissed by the lower court in California. The California Appellate Court, Second District, Division 1, reversed, saying: "Mr. Bellah also argues that the Nevada decree until set aside or modified is the controlling order, and in effect binds the child. This argument overlooks the transitory character of these actions. Under the Reciprocal Enforcement Laws of New York and California, in this case the courts of California have jurisdiction to ascertain and enforce adequate support for this minor child. It is sufficient for jurisdiction that New York is the place of residence of the child, and that California is the place of residence of the father."

In Gohdes v. Gohdes, 134 Cal. App.2d 819, 286 P.2d 539, the California District Court of Appeal, Fourth District, approved an allowance to the wife of a smaller amount than she had been granted by an Ohio court in a proceeding analogous to an action for separate maintenance.

Contra is Freeland v. Freeland, Tex. Civ. App., 313 S.W.2d 943. While the petitioner makes some effort to distinguish the case, we think this cannot fairly be done. It supports the respondent's position. However, we prefer the reasoning dictated by the provisions of the Act itself and followed by the Florida and California courts, supra. Commonwealth ex rel. Holzbaur v. Holzbaur, a case decided by the Superior Court of Pennsylvania and found in 185 Pa. Super. 343, 138 A.2d 268, and cited by the respondent, did not involve the Uniform Support of Dependents Law, as that court was careful to point out.

Whether, assuming as we have held above, that the Des Moines County court had jurisdiction to make an independent order fixing an amount for support different from that called for by the Illinois decree, the evidence is sufficient to support the order made we do not decide, since it may be materially different on a retrial.

The case is reversed and remanded for such further proceedings as may be taken in accordance with this opinion. Costs will be divided equally between the parties, except that the respondent will be allowed only $1.50 per page for the printing of the abstract of record.—Reversed and remanded.

All JUSTICES concur except LARSON, J., who dissents from Division II.

LARSON, J. (dissenting)—I must respectfully dissent from Division II in the majority opinion.

The provisions of the Uniform Support of Dependents Law adopted by the State of Iowa, I feel, go no further than to aid in the laudable purpose of preventing a roving delinquent parent from avoiding his responsibility to provide for his dependents and to lend its courts power of enforcement to a foreign state court which, after due consideration of the circumstances and needs, has decreed the amount of such payments in a divorce or separate-maintenance decree.

I feel sure the provisions of our law in this regard were not intended to interfere with the jurisdiction or power of another state court which has retained, as we do, the right to modify the original support decree for good and sufficient cause shown. If it were not so, the respondent state could reduce the support payments as well as raise them. It could, in effect, modify the original decree. What would be defendant's status in his home state then?

I would hold the authority granted our courts is to enforce by its processes the orders of the foreign state courts as the circumstances seem to justly require. It would be quite different where no other court had considered or issued a support order or had retained jurisdiction to modify such an order. In such case there would be no conflict of jurisdiction, and only the question of need and ability would be involved.