**Carolyn M. THOMPSON, Plaintiff and Appellee,**

v.

**Jerry T. THOMPSON, Defendant and Appellant.**

No. 14684.

Supreme Court of South Dakota.

Considered on Briefs March 7, 1985.

Decided April 24, 1985.

Michael J. Williams, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Robert A. Sambroak, Jr., Kadoka, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is an appeal from a judgment entered by the circuit court against Jerry T. Thompson under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act, SDCL ch. 25–9A, et seq. We affirm in part, reverse in part, and remand for a hearing consistent with the ruling herein.

## FACTS

In May 1977, a Wyoming District Court granted Carolyn M. Thompson (appellee-plaintiff) a divorce from Jerry T. Thompson (appellant-defendant). Under the terms of the decree, appellant was ordered to pay $400 a month to Carolyn for support of the couple's two children.

Appellant, however, did not begin his payments until October 1978, because the couple lived together until September 1978. Appellant then began paying Carolyn $300 a month child support. In November 1983, appellant returned to his parents' home in Philip, South Dakota. He was unemployed and living on unemployment compensation and he reduced his support payments from $300 to $200.

In December 1983, Carolyn, now also domiciled in this state, filed a complaint under the intrastate provisions of South Dakota's Revised Uniform Reciprocal Enforcement of Support Act (a/k/a RURESA) seeking to compel appellant to abide by the child support provisions of the Wyoming Divorce Decree. This complaint was later dismissed and refiled and appellant responded with an Answering Affidavit and Motion to Modify Judgment and Decree of Divorce. In these latter documents, appellant requested the trial court to reduce the child support obligation from $400 to $150 because of a substantial change in appellant's earning capacity, marital status of the parties, and other relevant factors.

Appellant's motion was heard in April 1984, and thereafter denied. The court's Memorandum Decision, although not specifically incorporated into its Findings of

Fact, Conclusions of Law, and Order, stated: "This court cannot modify a Wyoming judgment. If the defendant wishes to have that judgment modified he will have to go to the Wyoming court that issued it." Judgment was entered against appellant for support arrearages and appellant was ordered to pay $400 child support per month pursuant to the Wyoming decree.

## DECISION

### MAY THE CIRCUIT COURTS OF THIS STATE SET THE AMOUNT OF CHILD SUPPORT IN A RURESA ACTION TO COMPEL SUPPORT PAYMENTS UNDER SDCL CH. 25–9A, OR ARE THEY RESTRICTED TO THAT AMOUNT FIXED BY A DECREE OF A SISTER STATE?

When sitting as the responding court in a RURESA action to enforce a support order legally entered in another state, must a trial court of South Dakota act "merely as a collector for the sums therein provided, or on the other hand may make its own order according to the facts shown on the hearing"? *Moore v. Moore*, 252 Iowa 404, 409, 107 N.W.2d 97, 100 (1961). Although this precise issue is squarely before this Court for the first time, the trial court's ability in RURESA actions to "change the amount of support payments based upon the needs of the child and ability of the noncustodial parent to pay", was acknowledged by the majority opinion in *Todd v. Pochop*, 365 N.W.2d 559, 560 (S.D.1985), and specially asseverated in the special concurrence thereto. *Id.*, 365 N.W.2d at 560 (Henderson, J., specially concurring).

■ For the reasons herein expressed, we now specifically and unqualifiedly hold, as the vast majority of courts in this Nation hold, that in RURESA actions under SDCL ch. 25–9A to enforce the support provisions of a decree issued by a court of another state or circuit, the trial court may enter its own prospective support order,

raising or lowering the amount of the support obligation, if the circumstances then and there before the trial court dictate and warrant such a change.

The power of the trial court, when acting as a responding court under a RURESA action, to enter its own prospective support order different from that contained in the original decree stems from two statutory provisions. First, SDCL 25–9A–32 provides:

A support order made by a court of this state pursuant to this chapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.

This provision, known as the antisupersession provision, is § 31 of the Revised Uniform Reciprocal Enforcement of Support Act (1968).* Second, SDCL 25–9A–2 provides: "The remedies provided in this chapter are in addition to and not in substitution for any other remedies." This is § 3 of the 1968 version of RURESA.

■ Under these provisions, new support orders do not nullify, modify, or supersede the original support decree, but instead provide an additional, supplementary or cumulative remedy. *Willis v. Levesque*, 402 So.2d 1003 (Ala.Civ.App.1981); *Allain v. Allain*, 24 Ill.App.2d 400, 164 N.E.2d 611 (1960); *Banton v. Mathers*, 159 Ind.App. 634, 309 N.E.2d 167 (1974); *Howard v. Howard*, 191 So.2d 528 (Miss.1966); *Campbell v. Jenne*, 172 Mont. 219, 563 P.2d 574

---

* "Section 30 of the 1950 version of the Uniform Reciprocal Enforcement of Support Act provided that 'no order of support issued by a court of this state ... shall supersede any other order of support....' In the 1968 revision of the Act, the substance of § 30 of the 1950 version was trans-

ferred, with slight modification, to § 31, which states that 'a support order made by a court of this state pursuant to this Act does not nullify and is not nullified by a support order made by a court ... of any other state....'" Annot., 31 A.L.R.4th 347, 351–52 (1984).

(1977); *Bourdon v. Bourdon,* 105 N.H. 432, 201 A.2d 889 (1964); *Hester v. Hester,* 59 Tenn.App. 613, 443 S.W.2d 28 (1968); *Oglesby v. Oglesby,* 29 Utah 2d 419, 510 P.2d 1106 (1973); *Jaramillo v. Jaramillo,* 27 Wash.App. 391, 618 P.2d 528 (1980). Amounts paid under one support order are credited against amounts accruing or accrued for the same period under another support order. This latter language necessarily contemplates that two or more support orders may be outstanding and valid at the same time. *Moore v. Moore,* 107 N.W.2d 97; *Olson v. Olson,* 534 S.W.2d 526 (Mo.App.1976). Thus, "the authority of the court originally ordering payment is not affected or is its order modified by an order of the court of the responding state fixing another or different sum." *Despain v. Despain,* 78 Idaho 185, 190, 300 P.2d 500, 503 (1956). By the enactment of SDCL 25–9A–32 and SDCL 25–9A–2, "[t]he legislature apparently intended [to] ... provide authority to the courts of this State to apply the [Revised] Uniform Reciprocal Enforcement of Support Act so as to provide for the support of a minor child independent of and without regard for any other support judgments or whether there had been a change in the circumstances of either the child or its parents." *County of Stanislaus v. Ross,* 41 N.C.App. 518, 522, 255 S.E.2d 229, 231 (1979).

We therefore conclude that SDCL ch. 25–9A, et seq., empowers the circuit courts to make an independent and de novo determination of the proper amount of prospective child support payments based on the circumstances presently before that court. *Ainbender v. Ainbender,* 344 A.2d 263 (Del.Super.1975); *Commonwealth ex rel. Byrne v. Byrne,* 212 Pa.Super. 566, 243 A.2d 196 (1968); *Davidson v. Davidson,* 66 Wash.2d 780, 405 P.2d 261 (1965). Such an order does not modify the out-of-state support order and is prospective in effect only. When determining the proper amount of child support, the trial court should set "a reasonable amount 'suitable to the children's circumstances and situation in life and the [noncustodial parent's] financial means and ability to pay.' *Wallahan v. Wallahan,* 284 N.W.2d 21, 27 (S.D.1979)."

*Rykhus v. Rykhus,* 319 N.W.2d 167, 170 (S.D.1982).

The trial court's judgment is affirmed so far as it finds appellant liable for $7,400 in arrearages; reversed so far as it finds a current duty of support in the amount of $400 a month; and remanded for a hearing consistent with the ruling herein.

FOSHEIM, C.J., MORGAN, J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur.

WOLLMAN, J., concurs in result.