## MASSEY FERGUSON CREDIT CORPORATION, Plaintiff and Appellee,

v.

## Richard BICE, Defendant, Appellant and Third Party Plaintiff,

v.

## Wayne NELSON, individually and Wayne Nelson, d/b/a Depot Equipment of Ideal, South Dakota, Third Party Defendant.

No. 16511.

Supreme Court of South Dakota.

Argued Nov. 19, 1989.

Decided Jan. 17, 1990.

Stanley Whiting, Winner, for plaintiff and appellee.

John J. Simpson, Winner, for defendant and appellant.

Alvin Pahlke, Winner, for third party defendant and appellee.

MORGAN, Justice.

Richard Bice (Bice) appeals from a judgment granting summary judgment in favor of third-party defendant Wayne Nelson, individually and Wayne Nelson, d/b/a Depot Equipment of Ideal, South Dakota (Nelson). Additionally, Bice appeals an order denying his motion for a new trial and an order for repossession of a combine. This litigation has its conception in three separate transactions: the first arises from the sale and purchase of a combine and two heads; the second arises from a purported sale-purchase of a tractor for the purpose of securing money upon the assignment of the sales documents; and the third arises from the execution of a renewal and refinancing agreement that combined the combine and tractor payments and rescheduled the payments due thereon. We affirm the judgment.

## THE FIRST TRANSACTION

On October 25, 1979, Bice purchased a new Massey Ferguson 750 combine and two heads from Depot Equipment. Bice executed a retail installment sales contract[1] and security agreement on the same

---

**1.** The installment sales contract was signed: "George Bice, Bice Farms, Inc."; however, nei-

date and Nelson assigned the contract to Massey Ferguson Credit Corporation (MF Credit). MF Credit maintained a retail financing agreement with dealers such as Depot Equipment, which allowed the dealers to send installment sales contracts to MF Credit. If the contracts passed MF Credit's credit investigation, the corporation would purchase the contracts and pay the dealer. MF Credit is strictly a financing company for Massey Ferguson dealers and other machinery dealers. Massey Ferguson, Inc. is the corporation that manufactures the Massey Ferguson farm equipment and sells equipment directly to dealers such as Depot Equipment.

Bice executed an application for credit on the purchase of the combine on October 25, 1979. He also executed a financing statement on the combine and two heads which was filed with the Tripp County Register of Deeds on November 7, 1979. On June 24, 1985, another financing statement was filed with the register of deeds, duly executed by Bice, which gave MF Credit a secured interest in the combine and two heads. Bice does not claim his name was forged on either of these documents. This combine contract will reenter the picture again when Bice needs refinancing of a tractor and the combine.

## THE SECOND TRANSACTION

On September 4, 1981, Nelson appeared at Bice's home and informed him that Depot Equipment was in financial trouble and that he needed to do something to make Depot's inventory look better. Together, the two men contrived a scheme for the sale to Bice of a non-existent John Deere tractor [2] and the assignment of the contract to MF Credit for immediate cash to Nelson and Nelson to furnish Bice the money to make the payments. In furtherance of this scheme, Bice signed a blank installment sales contract [3] as a buyer of farm equipment. Subsequently, the contract was filled in to show that Bice purchased a John Deere 4240 tractor from Depot Equipment and that Depot received a Massey Ferguson 1135 tractor in trade. Neither of these transactions occurred. Bice knew that he would not take possession of the John Deere tractor and that he had not traded in a Massey Ferguson tractor. More importantly, Bice knew that he was aiding in creating a sham contract for the specific purpose of Nelson selling the contract to MF Credit. Nelson received $18,000 from MF Credit and MF Credit received unsecured paper because no equipment changed hands.

As part of the scheme, Bice and Nelson agreed that when payments came due on the tractor, Nelson would advance the money to Bice who would in turn make the payments. Bice stated that the bogus contract "would not hurt a soul" so long as Nelson gave him the money to make payments.

Unfortunately, Nelson didn't provide the funds on time for Bice to make payments. The first payment was due on September 1, 1982. After the first payment was missed, a MF Credit representative, Ken Hansen (Hansen), visited Bice. Bice did not inform Hansen that he had never received the John Deere tractor. Hansen made several subsequent visits after missed payments and was never informed by Bice that he did not have the tractor.

Finally, Nelson did provide Bice with $8,000 to begin making payments. Bice paid $6,000 to MF Credit on May 3, 1983, and $2,300 to MF Credit on April 6, 1984. No subsequent payments were made. It was only after Massey Ferguson Inc. terminated Nelson's Massey Ferguson dealer's sales and service agreement on Octo-

ther the security agreement nor any of the other documents executed in support of the transaction, nor any executed thereafter in relation to the combine and heads, indicated any corporate involvement.

2. The tractor described in the sale documents had been in Nelson's inventory, but had been transferred to another implement dealer.

3. This was the third such blank contract signed by Bice. He had signed blank contracts when he bought the combine in the first transaction and on a previous occasion when he had actually purchased a tractor from Nelson.

ber 19, 1984, that Bice informed Hansen that he never had the John Deere tractor and there was no collateral to repossess.

As time elapsed, Bice defaulted on the combine contract and a renewal and refinancing agreement was signed by Bice on July 24, 1984. Nelson is listed as a guarantor on this agreement. Bice also defaulted on the bogus tractor contract at approximately the same time.

## THE THIRD TRANSACTION

On October 1, 1985, Bice executed a renewal and refinancing agreement to replace the one made on July 24, 1985. This agreement extended the tractor and combine repayment from November 1, 1985, until November 1, 1987. The agreement was signed in blank by Bice in Hansen's presence. Bice testified that Hansen was aware of the tractor fraud when he had him sign the refinancing agreement in blank. Nelson was not a party to the agreement extending the tractor and combine repayment. Bice claims that Hansen wanted to put the combine, two heads, and the John Deere tractor on the same renewal agreement, but Bice only wanted the combine and two heads. Bice testified that Hansen later put the tractor on the renewal agreement in addition to the combine and two heads without Bice's permission.

MF Credit brought suit against Bice on the retail sales contracts, refinancing agreement, and security agreements covering the combine and the John Deere tractor. Additionally, they sought a finding that they had a perfected security interest in the equipment.

Bice filed a third-party complaint against Nelson seeking indemnity should he be held liable to MF Credit. He based his indemnity claim on Nelson's failure to deliver the tractor and the combine claim based on Nelson's signing the July 24, 1984, refinancing agreement as a guarantor.

The trial court granted a motion for summary judgment in Nelson's favor dismissing the third-party complaint on the grounds that Bice was in pari delicto in the fraud with Nelson and not entitled to indemnity. Further, the trial court held that Nelson's guarantee ran to MF Credit and not Bice; therefore, as a matter of law Bice was not entitled to recovery.

MF Credit's causes of action went to a jury and they were awarded $23,494.79 as damages on the combine contract and $19,000 as damages on the tractor contract. As part of his defense, Bice argued that the combine was purchased by Bice Farms, Inc. and not Bice individually. The jury rejected this claim by returning a verdict against Bice individually.

Following the verdict Bice moved for a new trial, claiming he had discovered new evidence that implicated Massey Ferguson, Inc.'s employee in preparing the illegal tractor contract. The trial court denied the motion.

Finally, as MF Credit attempted to have the sheriff levy on the combine on December 27, 1988, Bice's attorney wrote to the sheriff and claimed that the combine was owned by Bice Farms, Inc., not Bice. MF Credit made a motion to show cause and a hearing was held on January 27, 1989. Bice's attorney argued that the ownership of the combine was in dispute and that the sheriff was required to conduct a jury trial to determine ownership pursuant to SDCL 15-18-31. The trial court disagreed and ordered that the combine could be repossessed. Bice did not file objections to the findings of fact and conclusions of law for the repossession. The sheriff returned the writ of execution on May 12, 1989.

Bice raises the following issues on appeal:

(1) Whether the trial court erred in granting summary judgment in favor of third-party defendant Nelson.

(2) Whether the trial court abused its discretion in failing to order a new trial because of newly discovered evidence.

(3) Whether the trial court erred in restricting Bice's cross-examination as to any authorized additions made to the July 24, 1985, refinancing agreement, in giving MF Credit's instructions on unauthorized acts by its

·agent and the lack of effect of any alteration of the refinancing agreement, and allowing the business record custodian to testify to general practices of MF Credit.

(4) Whether the trial court's order ·denying a motion to determine ownership of the combine by a jury pursuant to SDCL 15–18–31 was clearly erroneous.

## SUMMARY JUDGMENT OF THE THIRD–PARTY COMPLAINT

■ Bice contends that summary judgment was inappropriate because the issue of whether he committed fraud with Nelson, thus precluding him from seeking idemnity from Nelson and enforcing Nelson's guarantee of the combine debt, is a jury question. Nelson counters that there is no genuine issue of material fact and that summary judgment was appropriate.

The standard of review of the grant or denial of summary judgment is well established.

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118,

120 (S.D.1985); *Ruple v. Weinaug,* 328 N.W.2d 857, 859–60 (S.D.1983).

*Pickering v. Pickering,* 434 N.W.2d 758, 760–61 (S.D.1989).

The trial court found that Nelson and Bice were in pari delicto in committing the fraud against MF Credit and, as a matter of public policy and law, Bice could not maintain his complaint against Nelson. We agree on both bases.

In *Beverage Co. v. Villa Marie Co.*, 69 S.D. 627, 632, 13 N.W.2d 670, 672 (1944), we stated:

> The policy that a court will not lend its aid to a man who founds his cause of action upon an immoral or illegal act will move a court to turn a deaf ear to the petitions of all equally culpable parties to an illegal bargain, and to leave them in the position in which they have placed themselves.

*See, generally* 27 Am.Jur.2d *Equity* § 141 (1966).

A correlative to this doctrine is the equitable principle of clean hands. "A [person] who does not come into equity with clean hands is not entitled to any relief herein, but should be left in the position in which the court finds him." *Kane v. Schnitzler*, 376 N.W.2d 337, 341 (S.D.1985); *Reese v. Huron Grain & Coal Co.*, 67 S.D. 9, 287 N.W. 640 (1939).

We next decide whether Bice's and Nelson's actions amount to fraud. In *Sperry Corp. v. Schaeffer*, 394 N.W.2d 727, 730 (S.D.1986), we set out the following test:

> [T]here must be a misrepresentation (1) known to be such (or recklessly conceived) by the party making it; (2) made for the purpose of inducing the other party to act; and (3) relied on to the detriment of the innocent party.

Using these criteria, it is clear that Bice and Nelson were equally involved in perpetrating the fraud on MF Credit. Bice knew that he was not receiving the John Deere tractor when he signed the installment sales contract on September 4, 1981. He also knew that Nelson had not received a tractor from him in trade-in. The entire fraudulent scheme was planned by both men so Nelson's inventory would look bet-

ter and he could receive the $18,000 for selling the contract to MF Credit. MF Credit innocently relied on Bice's and Nelson's representations in the sales contract and suffered detriment in not having collateral available securing their interest for the money paid to Nelson.

With Bice's hands still soiled with the fraud against MF Credit, it would violate the principles of equity to allow him to maintain a cause of action against Nelson for indemnity and as a guarantor. *Beverage Co., supra; Kane, supra; Reese, supra.* The trial court did not err in granting summary judgment on the basis of public policy.

Summary judgment was also appropriate as a matter of law. Bice claims that he was entitled to indemnity from Nelson on any amount owed MF Credit on the sham tractor contract. Alternatively, Bice claims that Nelson is liable for the judgment owed MF Credit on the combine because Nelson signed as guarantor of the debt.

In *Degen v. Bayman,* 86 S.D. 598, 604, 200 N.W.2d 134, 137 (1972), we held that where joint tort-feasors are in "pari delicto—that is, where each is chargeable with active or affirmative negligence contributing to the injury, neither is entitled to indemnity from the other[.]" The doctrine of pari delicto does not require equal degrees of negligence to preclude indemnity, as Bice suggests.

> If a person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act of omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he has undertaken, he is deprived of the right of indemnity.

86 S.D. at 604, 200 N.W.2d at 137. *See* 41 Am.Jur.2d *Indemnity* § 21 (1968) (where tort-feasor's acts unite in causing injury, mere fact that their negligence was of differing degrees does not entitle one party to indemnity from the others).

The uncontested facts show that Bice was an active party in carrying out and concealing the fraud from MF Credit. Bice signed the installment sales contract that permitted Nelson to receive $18,000 from MF Credit. More critically, Bice never informed agents of MF Credit that he did not have the tractor until Nelson was out of business, thus allowing the fraud to go undetected and MF Credit to suffer injury in not having secured collateral. As such, Bice was in pari delicto with Nelson and not entitled to indemnity. *Degen, supra.*

Bice also claims that he was entitled to relief against Nelson because Nelson signed as a guarantor of the combine debt owed to MF Credit. Bice simply misunderstands the obligation created by a guarantee. The guarantee ran from Nelson to MF Credit to pay the debt if Bice did not pay, not to Bice if he was forced to pay a debt. The debtor, Bice, is not a party to the guarantee; the guarantor, Nelson, is not a party to the installment sales contract owed by Bice. *See Miners & Merchants Saving Bank v. Comer,* 82 S.D. 1, 140 N.W.2d 390 (1966); 38 Am.Jur.2d *Guaranty* § 4 (1968). Thus, the guarantee made by Nelson ran to MF Credit and provided Bice no basis for relief.

Finally, Bice argues that summary judgment was not appropriate because the trial court did not make an express determination pursuant to SDCL 15–6–54(b) that there was no just reason for delay and that an entry of judgment should be made. This statute is simply not relevant. Its usual application is to permit an interlocutory appeal of matters where less than all the parties or all the issues have reached a final judgment. *Bettelyoun v. Sanders,* 90 S.D. 559, 243 N.W.2d 790 (1976). Here, summary judgment became final against Bice when the trial court entered the final judgment after the trial. SDCL 15–6–54(b) has no application to these facts.

## NEW TRIAL

Bice claims that the trial court abused its discretion in failing to grant his motion for new trial on the grounds of newly discovered evidence under SDCL 15–6–59(a)(4). The new evidence is a document in the possession of Doug Wiken that contains the handwriting of a Duane Johnson, a sales representative of Massey Ferguson,

Inc. Bice claims that handwriting on the document is identical to the handwriting on the sham tractor contract. Therefore, Bice argues, the new evidence demonstrates that Nelson was assisted in preparing the tractor contract and he and Nelson were not in pari delicto. Both MF Credit and Nelson argue that this evidence was discoverable before trial and would not change the outcome of the case. We agree.

■ Before we may reverse the trial court on this issue, Bice must show that the trial court abused its discretion in not granting the motion because as Bice contends the evidence was not discoverable before trial and because it would have changed the outcome. *Matter of S.W.*, 398 N.W.2d 136 (S.D.1986); *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149 (S.D.1986); SDCL 15-6-59(a)(4). Bice fails to meet his burden on either ground.

■ First, Bice's argument that he could not have discovered the evidence before trial is unpersuasive. Granted, Nelson was incapacitated by a stroke before the trial and died during the trial, but Bice has not shown why if he was able to discover the new evidence after Nelson's death, that he could not have, with due diligence and proper discovery, uncovered it before trial. If Bice had questions about the authenticity of the tractor contract, he could have had it examined by a document examiner, comparing Nelson's handwriting on the tractor contract with other examples of Nelson's handwriting. Bice's suggestion that he was unfamiliar with Nelson's handwriting is preposterous. The two men had engaged in business dealings for years. Nelson's handwriting appears on the original combine contract and could have been compared to the questioned handwriting on the John Deere contract. This evidence could have been discovered before trial. *Enchanted World, supra;* SDCL 15-6-59(a)(4).

Second, even assuming that the evidence could not have been found before trial, it would not change the outcome of this case. Duane Johnson, the man alleged to have assisted in filling out the tractor contract,

was not an agent of MF Credit, but a former employee of Massey Ferguson, Inc. Notably, Bice does not allege that Johnson, in filling out the contract, had any knowledge of the fraudulent scheme. Even if it were the case, Bice does not allege that the MF Credit had knowledge of this corporation's agent's action. Finally, any actions on the part of Johnson do not negate the admissions by Bice that he agreed to and committed a fraud upon MF Credit to assist his friend Nelson. Bice relies solely on *Commercial Credit Equipment Corporation v. Johnson*, 87 S.D. 411, 209 N.W.2d 548 (1973), to support his argument. We find this case clearly distinguishable. Bice was permitted to argue the issue of fraud in his counterclaim against the company in the principal action and the question of who filled out the contract was not a material issue in the third-party claim for indemnity against Nelson. Bice and Nelson are still in pari delicto in committing the fraud. *Degen, supra;* 41 Am.Jur.2d *Indemnity* § 21 (1968). Bice still comes to this court with unclean hands after committing a fraud asking for relief. This new evidence does not change these facts one iota and would not have entitled Bice to a remedy against any of the parties. *Enchanted World, supra; S.W., supra.*

Therefore, we do not find that the trial court abused its discretion in denying Bice's motion for a new trial.

## MATERIAL ALTERATION OF CONTRACTS

■ Next, Bice argues that the trial court erred as a matter of law in holding that no material alterations of the underlying combine and tractor contracts occurred when Bice signed a blank refinancing agreement on October 1, 1985, and an agent of MF Credit, contrary to Bice's wishes, included the tractor on the agreement along with the combine. As a result of this holding, Bice was not allowed to cross-examine or put forward evidence on the alleged alteration of the refinancing agreement. Further, the trial court gave an instruction saying that Bice was not relieved of his original contractual obli-

gations on the tractor or combine by the unauthorized alteration of a refinancing agreement by an agent of MF Credit. The trial court ruled that since there was no *material* alteration of the underlying tractor and combine contracts, Bice was not entitled to be discharged from those obligations under SDCL 57A–3–407(2). We believe the trial court reached the correct decision, but for the wrong reason.

Since our decision turns on the construction of a statute, a question of law is involved and the decision below is fully reviewable without deference to the decision of the trial court. *Petition of Famous Brands, Inc.*, 347 N.W.2d 882 (S.D. 1984).

All parties to this litigation assumed that the refinancing agreement and two underlying contracts were covered under Article 3 of the Uniform Commercial Code (UCC). That was incorrect.

SDCL 57A–3–407 provides, in pertinent parts:

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

. . . .

(b) An incomplete instrument, by completing it otherwise than as authorized; or

. . . .

(a) Alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense[.]

SDCL 57A–3–102(1)(e) defines "instrument," as used in Article 3 of the UCC, to mean a "negotiable instrument." *See* 1 White & Summers, Uniform Commercial Code § 14–4 (3rd Edition 1988). SDCL 57A–3–104(1) sets out the necessary elements for negotiability.

(1) Any writing to be a negotiable instrument within this chapter must

(a) Be signed by the maker or drawer; and

(b) Contain an *unconditional promise or order to pay a sum certain in money* and *no other promise, order, obligation or power given by the maker or drawer* except as authorized by this chapter; and

(c) Be payable on demand or at a definite time; and

(d) Be payable to order or to bearer. (Emphasis added.)

The October 1, 1985, refinancing agreement is not a negotiable instrument because it fails to meet two conditions of negotiability: (1) it contains a conditional promise because it is governed by provisions in the two underlying installment sales contracts and (2) it contains other promises made by the drawer, Bice.

First, the refinancing agreement states: "I understand and agree that the execution and delivery of this agreement shall not rescind or revoke the refinanced Contract(s) or affect in any way the rights and obligations thereunder except as expressly amended or revised herein." By its own language, the agreement requires reference to the combine and tractor installment contracts. These contracts contain provisions as to legal use of the property and restrictions on the debtor removing the property from outside the county of the debtor's residence. Such references to other contracts defeat the purpose of a negotiable instrument, to-wit: permitting a holder to tell from the face on an instrument whether that person is able to take the instrument as a holder in due course. *Discount Purchasing Co. v. Porch*, 12 UCC Rep.Serv. 600 (Tenn.Ct.App.1973); 5 Anderson, Uniform Commercial Code § 3–104:9 (1984).

SDCL 57A–3–105(2) provides, in pertinent part, that an order to pay is made conditional by such subjugating language:

(2) A promise or order is not unconditional if the instrument

(a) States that it is subject to or governed by any other agreement[.]

Here, the language of the refinancing agreement went beyond mere reference to underlying agreement; it required reference to the contracts to determine terms of

the agreement and spelled out the refinancing agreement's subservience to the contracts if the terms were not addressed in the refinancing agreement. Therefore, the refinancing agreement contained a promise subjecting it to another agreement, thereby making it conditional. SDCL 57A–3–105. *See generally Salomonsky v. Kelly*, 232 Va. 261, 349 S.E.2d 358 (1986) (notes referred to payments schedule on other contracts); *Booker v. Everhart*, 294 N.C. 146, 240 S.E.2d 360 (1978) (notes incorporated terms of deed of separation and property settlement).

Second, the refinancing agreement was also not a negotiable instrument because it contains "other promises" made by the drawer. These include the following: (1) the purchase of property damage insurance; (2) the purchase of credit life insurance; (3) provision for late payment fees; (4) a provision for rebate of unearned finance charge; and (5) an agreement to pay all taxes levied against the property.

Other courts examining this same issue have repeatedly held that provisions such as the ones in question rendered an instrument non-negotiable. *Insurance Agency Managers v. Gonzales*, 578 S.W.2d 803 (Tex.Civ.App.1979) (retail installment contract included other promises including purchase of property insurance); *Chrysler Credit Corp. v. Friendly Ford, Inc.*, 535 S.W.2d 110 (Mo.App.1976) (tractor contract required purchase of insurance); *All Lease Co., Inc. v. Bowen*, 20 UCC Rep.Serv. 790 (Cir.Ct.Md.1975) (provision for late payments and to insure goods); *Discount Purchasing Co., supra* (provision for late charges and rebate of unearned finance charges); *Allen–Parker Company v. Lollis*, 257 S.C. 266, 185 S.E.2d 739 (1971) (required to keep free of taxes); *Geiger Finance Company v. Graham*, 123 Ga. App. 771, 182 S.E.2d 521 (1971) (application for insurance). *See generally* 5 Anderson, Uniform Commercial Code § 3–104:19 (1984); 1 White & Summer, Uniform Commercial Code § 13–2 (3rd Edition 1988).

Thus, the refinancing statement cannot qualify as a negotiable instrument under SDCL 57A–3–104. Bice's attempt to use the material, fraudulent alteration provisions of SDCL 57A–3–407 were, as the trial court held, irrelevant. The trial court specifically asked Bice whether he had any other basis than the statute to base his theory that any alleged fraud on the refinancing agreement altered the two underlying contracts and he indicated that he did not. Thus, he has not preserved any other theory to warrant a review of the trial court's decision. *Johnson v. John Deere Co.*, 306 N.W.2d 231 (S.D.1981); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D. 1976). Though the trial court's rationale for its holding was wrong, it nonetheless reached the correct result and we will uphold the trial court if there is any valid basis for its decision. *Seymour v. Western Dakota Vocational Technical Institute*, 419 N.W.2d 206 (S.D.1988); *Western Air Lines, Inc. v. Hughes County*, 372 N.W.2d 106 (S.D.1985); *South Dakota Medical Service, Inc. v. Minnesota Mut. Fire & Cas. Co.*, 303 N.W.2d 358 (S.D.1981).

As a peripheral issue to his cross-examination being restricted, Bice asserts without any precedent or statutes that he was denied a fair trial because the trial court allowed MF Credit's record custodian, Herbert Kaplan, to unfairly testify about the contents of the business records he introduced. We have continually said that a party's failure to offer precedent for its position waives the issue on appeal. *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977). Bice's failure to provide any case law or statutes for his asserted errors waives his argument.

## REPOSSESSION OF COMBINE

■ Finally, Bice claims that the trial court was clearly erroneous in finding that the jury had determined that the combine was owned by Bice and not Bice Farms Inc.; therefore, he was entitled to a jury trial on issue of ownership before repossession as required by SDCL 15–18–31.[4] MF

4. SDCL 15–18–31 provides, in pertinent part: "If the property levied on be claimed by a third person as his property, the officer may summon from his county six persons qualified as jurors to try the validity of the claim."

Credit argues that Bice has waived this issue because he did not object to the proposed findings of fact and conclusions of law.

We said in *GMS, Inc. v. Deadwood Social Club, Inc.*, 333 N.W.2d 442, 443 (S.D. 1983), that a party's failure to question the sufficiency of the evidence before the trial court by proposing findings or objecting to his opponent's findings restricts the intensity of this court's standard of review to "whether the findings support the conclusions of law and judgment." *Application of Veith*, 261 N.W.2d 424, 425 (S.D.1978). The facts are considered conclusive and may not be challenged. Since Bice did not file any objections to the proposed findings of fact, our review is limited to whether the facts support the conclusions of law.

The trial court made the following relevant findings that are considered conclusive:

30. That the jury returned a money judgment against the Defendant, Richard Bice, and therefore, obviously rejected Defendant's contention that the combine was purchased by Bice Farms, Inc.

31. That exhibits offered at trial established that Defendant, Richard Bice, gave a secured interest into the combine and two heads in Richard Bice's individual capacity and not as Bice Farms, Inc.

From these findings, the trial court concluded: "That the Defendant's position that Bice Farms, Inc. is the owner of the combine and two heads and therefore, ownership must be determined as set out in SDCL 15–18–31 are without merit since the issue of who purchased the combine was tried to the jury."

We cannot say that these findings do not support the trial court's conclusion.

Affirmed.

All the Justices concur.