**STATE OF KANSAS, ex rel. John W. ADAMS, Petitioner and Appellee,**

v.

**Donice Fay ADAMS (Gale Hendricks), Respondent and Appellant.**

**No. 16661.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 12, 1990.

Decided April 25, 1990.

William Mark Kratochvil, Deputy State's Atty., Brookings, for petitioner and appellee.

Alan F. Glover of Denholm, Glover & Britzman, Brookings, for respondent and appellant.

MORGAN, Justice.

Gale Hendricks, formerly Donice Fay Adams (Gale), appeals an order determining that she was $3,300 in arrears in child support and an order increasing her child support payment to $200 per month. We affirm in part, reverse in part and remand.

John W. Adams (John) and Gale were granted a decree of divorce by the district court of Sedgwick County, Kansas, on January 15, 1986. Under the terms of this decree, Gale was required to pay child support to John for the couple's four children in the amount of $100 per month.

In July 1987, John filed an action in the Kansas district court pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA), seeking child support arrearages in the amount of $3,300 and an increase in child support from $100 per month to $300 per month. Gale did not receive notice of these proceedings.

This petition was forwarded to the Moody County State's Attorney at Flandreau, South Dakota, about October 13, 1987, where processing was begun thereon in accordance with the *Revised* Uniform Reciprocal Enforcement of Support Act (RURESA), SDCL ch. 25–9A, and that office secured a show cause order. The venue was transferred to Brookings County, South Dakota, pursuant to Gale's request for change of venue.

The matter was not brought on for hearing until September 26, 1988. At that time, Gale filed an affidavit showing her monthly income to be $520 per month. She subsequently filed another affidavit on October 4, 1988, stating that her current husband was employed by Dakota Contracting Corporation, that he netted $387.84 per week and that due to working in the construction industry, he was usually only employed six to eight months a year. Additionally, the affidavit stated that she had provided her oldest daughter $600 ($500 sent to Gale's sister and $100 given in cash to the daughter) to assist the daughter in moving into an apartment. Gale also indicated that she believed that John had remarried and that his wife worked. The trial court also had before it John's affidavit in the form of his original URESA petition. It shows that he made $800 per month as of July 31, 1987. There is no place on this petition to indicate whether John is remarried or how much his spouse might make.

The trial court filed a Memorandum Opinion on November 15, 1988, indicating its intent to apply SDCL 25–7–7 (repealed March 1989) standards for child support to these facts. Further, the trial court indicated its intent to deviate from the standard because Gale and her new husband's net income was $1,552 per month. The court proposed to set child support at $225 per month and ordered Gale to pay $3,300 in arrearages.

Gale subsequently filed a petition to reopen the proceedings and the matter came before the trial court on December 13, 1988. At this hearing, Gale testified that

her oldest daughter had turned eighteen in June, 1988, and was no longer a dependent. Though she did not dispute that she was $3,300 in arrears on child support, she argued that the $600 supplied to her daughter to help her move out of John's house should have been credited against the arrearages. Gale further testified that her husband's employment had changed, requiring a great deal of travel and time away from home. As a result of this new development, she planned to stop working so she could spend more time with him. Finally, she objected to South Dakota child support tables being applied to her when she could not cross-examine her ex-husband about his income, current marital status, and possible income supplied by his spouse. She once again reiterated her belief that John was remarried and that his spouse worked.

The trial court filed its findings of fact and conclusions of law on January 24, 1989. It applied the tables under the existing SDCL 25–7–7, including the allowance for deviations. Gale's income was computed as being between $701 and $800 per month. The court ordered Gale to pay prospective child support in the amount of $200 per month. Additionally, it found that she was $3,300 in arrears on his previous child support and ordered payments of $150 per month until the sum was paid.

Gale raises the following two issues on appeal:

(1) Whether the trial court abused its discretion in not deducting the $600 given to Gale's daughter for an apartment from the amount of her child support arrearages.

(2) Whether the trial court abused its discretion in setting Gale's child support payments at $200 per month.

We turn to Gale's first issue. Though she admits that the divorce decree did not provide for independent child support payments to her four children and specially provide that all support payments should be made to the clerk of court's office, she nonetheless claims that the trial court abused its discretion in not crediting this amount against child support arrearages.

No case law or statutes are cited for this proposition.

■ We have long held that a party's failure to provide precedent for its position waives that issue on appeal. *Massey Ferguson Credit Corp. v. Bice,* 450 N.W.2d 435 (S.D.1990); *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114 (S.D.1977). Gale's failure to provide case law or statutes for her asserted error waives the issue.

■ We then examine Gale's second issue. At the outset, we note our standard of review. The trial court's setting of child support will not be disturbed unless the challenging party demonstrates that the court abused its discretion. *Peterson v. Peterson,* 434 N.W.2d 732, 734 (S.D.1989); *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977).

Gale raises three sub-issues, contending that the trial court abused its discretion in the following particulars: (1) it denied her due process because John was not within this jurisdiction and subject to cross-examination about his current finances and marital status; (2) the trial court failed to make the five mandated special findings when it deviated from the schedule in SDCL 25–7–7; and (3) she was unconstitutionally deprived of property (increased child support payments) in violation of art. VI, sec. 2 of the South Dakota Constitution.

With respect to the first sub-issue, lack of due process, we first note that in *Thompson v. Thompson,* 366 N.W.2d 845 (S.D.1985), we held that a trial court in a RURESA action could prospectively set child support in greater amounts than in the original decree from another state. In fact, the choice of law portion of our RURESA statute requires application of South Dakota law if the obligor resides in this state. SDCL 25–9A–6 states:

Duties of support applicable under this chapter are those imposed under the laws of any state where the obligor was present for the period during which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

Since Gale is an "obligor" as defined by statute, SDCL 25–9A–1(8), and resided in this state during the period support is being sought, the trial court correctly applied South Dakota law, including the tables under SDCL 25–7–7, which were the law at that time.[1] SDCL 25–9A–6; *see generally McDonald v. McDonald*, 634 P.2d 1031 (Colo.App.1981) (under RURESA, law of the state of obligor applied to set prospective child support); *Miller v. Jolly*, 347 Pa.Supr. 218, 500 A.2d 485 (1985) (in RURESA choice of law case, law of obligor's state is applied).

In *Thompson*, we further determined that the legislature, by enactment of SDCL 25–9A–32 and SDCL 25–9A–2, intended that our courts are authorized to apply RURESA so as to provide child support "independent or and without regard for any other support judgments *or whether there had been a change in the circumstances of either the child or its parents."* *Id*, at 848. (Emphasis added.)

■ Gale seeks to distinguish *Thompson* because in that case both parents were within the State of South Dakota at the time. Her due process claim is predicated on John not being present in the State so as to be subject to cross-examination, thereby depriving her of due process. We do not agree with this analysis. We would point out that Gale had notice of this proceeding by April of 1988, and no hearings were held until late September, 1988. That gave her counsel at least five months to engage in such discovery as would be necessary to disclose the information that could have been disclosed by cross-examination.

All that being said, *Thompson* did not relieve the trial court of its duty of determining support "based on the circumstances *presently* before that court." 366 N.W.2d at 848 (emphasis supplied). Further, *Thompson* was decided before the

legislature mandated the use of the schedules found in SDCL 25–7–7, together with the provisions for deviations therefrom. We then examine Gale's second sub-issue.

Here, the trial court received current information as to Gale and her new husband's finances. The court found that Gale's net income was $520 per month and her new spouse's income was approximately $1,182 per month. The court then used this current information to deviate from the guidelines found in the existing SDCL 25–7–7 to impute to Gale an income of between $701 and $800 per month.

On the other hand, the trial court accepted John's affidavit from 1987, nearly a year and a half before the proceedings, as the basis for his income. This despite Gale's argument that he had remarried and that his wife was working.

■ And while in *Dixon v. Dixon*, 423 N.W.2d 507, 512 (S.D.1988), we acknowledged that proceedings for modification of support issues "involv[ing] a ... change in need or ability to pay, may properly be heard by affidavit," this general proposition cannot be used as an excuse not to thoroughly investigate the ability to pay of *both* parents. *Donohue v. Getman*, 432 N.W.2d 281, 283 (S.D.1988) (trial court must consider totality of *both* parents' financial condition). John's affidavit as to financial ability to pay was stale and considering the allegations made by Gale, potentially inaccurate and misleading. *Saturnini v. Saturnini*, 260 Minn. 494, 110 N.W.2d 480 (1961) (when affidavits are in conflict, desirability of expeditious proceeding gives way for need for more formal proceedings). The trial judge abused his discretion in permitting the use of John's stale affidavit, especially when John was not within the jurisdiction and subject to being called as a witness.[2]

---

1. In *Thompson*, we said that "new support orders do not nullify, modify, or supersede the original support decree, but instead provide an additional, supplementary or cumulative remedy." 366 N.W.2d at 847 (citation omitted).

2. When faced with stale or potentially inaccurate information, the trial court has many options: it could require current answers supplied

through interrogatories; it has the power to require the obligee (John) to appear or pay the cost of the obligor's (Gale) attorney to travel to the obligee's home state for a deposition. *State ex rel. State of Cal. v. Ramirez*, 99 N.M. 92, 654 P.2d 545 (1982); *see* 3 Melli et al., Alimony, Child Support & Counsel Fees—Award, Modification & Enforcement § 18.02[3] (1988). We

We are aware, as John's counsel points out, that SDCL 25–9A–21 allows a party to request a continuance and seek a deposition of the obligor if there is a dispute as to the amount of support owed. Though that was not done here, this discretionary provision does not relieve the trial judge of his or her duty to accurately determine both parents' income. *Donohue, supra.*

This error was exacerbated by the trial judge's failure to make the five specific findings that we mandated in *Bruning v. Jeffries,* 422 N.W.2d 579 (S.D.1988), when the court chooses to deviate from the income guidelines set out in SDCL 25–7–7. Those specific findings required are as follows:

(1) *Financial condition of the parents, including, but not limited to income of a new spouse or contribution of a third party to the income or expenses of that parent;*

(2) The standard of living of the child;

(3) The age and special needs of the child;

(4) The effect of provisions relating to custody and visitation; or

(5) Child care.

422 N.W.2d at 580 (emphasis in original).

■ As previously discussed, John's stale affidavit prevented an accurate picture of the financial condition of both parents. Therefore, the finding required for financial conditions was woefully inadequate. Further, the trial court failed to make any findings as to standard of living of the children, age and special needs of children and child care. This was an abuse of discretion. *Bruning, supra.*

Therefore, we reverse and remand the prospective support order to the trial court with instructions that the court hold a new hearing, where it shall receive *current* and accurate evidence of both parents' income and any income of *both* spouses. If the court then chooses to deviate from the income guidelines, specific findings required by *Bruning* should be made.

are not mandating any of these options, but rather, offering them as possible solutions. In

Finally, we look to Gale's third sub-issue, her claim of unconstitutional deprivation of property. As we pointed out in our discussion of the first issue, Gale had ample opportunity to engage in discovery, but failed to do so. And, since we are remanding for a new hearing on the second issue, we hold the constitutional issue to be moot.

We affirm the order for arrearages in child support and reverse and remand for a new hearing on the prospective support order.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in part and concurs in result in part.

HENDERSON, Justice (concurring in part; concurring in result in part).

Believing that this opinion is conceptually oxymoronic, I concur in part and concur in result in part.

I concur with that aspect of the opinion which affirms the child support arrearages of $3,300 which the mother has refused to pay and a reduction thereof at the rate of $150 per month. She has brought her appeal to the highest court of this State with unclean hands, desiring equity. She supplicates the Court to, in effect, reduce child support payments now established at $200 per month (formerly $300 per month and then reduced to $200 per month). I would dismiss her appeal in its entirety were it not for Finding of Fact VI entered by the trial court which states: "That Petitioner John W. Adams, has refused to grant Respondent reasonable visitation of the Parties' children." Thus, both parties are in court with unclean hands. For recent expression, on cases in this Court, involving this hoary old doctrine (but still as good as gold), *see Müller v. County of Davison,* 452 N.W.2d 119 (S.D.1990); *Stach v. Stach,* 369 N.W.2d 132, 136 (S.D.1985).

To understand my oxymoronic thesis, I would ask the reader to digest my recent concurrence in result in *Nelson v. Nelson,* 454 N.W.2d 533 (S.D.1990). Said concur-

any event, if an affidavit is used, it must be current and accurate.

rence in result cites previous writings of mine, all pertaining to the "mandatory child support guidelines." Question: When, in the past, the trial judges of this State have been "mandated" like robots or automatons to follow a schedule, how do they exercise a discretion? * Conceptually oxymoronic? Surely.

We cannot expect men and women who sit on the trial bench to use their intelligence and experience by exercising a sound discretion, and then be mentally tied and bound and say to them, in effect: do what the guidelines say. It's oxymoronic. And that is why I have pointed out in *Nelson v. Nelson* that the fine print, namely SDCL 25–7–6.10, via a 1989 amendment, changed the ball game by including "(2) Any financial condition of either parent which would make application of the schedule inequitable."

This case has been a long time brewing. Too long. It started in the summer of 1987 in Kansas. In the fall of 1987 there was some processing in South Dakota but not until the fall of 1988, was there some genuine legal activity. In late fall of 1988, a memorandum opinion was filed. Not until January 24, 1989, were findings of fact and conclusions of law formally entered, obviously, a 1989 amendment was not in effect and the trial judge decided this case under the old "mandatory child support guidelines." This Court is reversing him because of a (1) stale affidavit which he took into consideration and (2) he did not follow the guideline rubrics. My writings consistently reflect that trial judges should be, and are, imbued with constitutional power to decide cases which includes setting child support in accordance with their good judgment and discretion. Therefore, following that consistent rationale, which I have expounded on in the past, at great length, I

would not reverse this trial judge for failure to follow the rubrics emanating from the bureaucrats in Washington, DC. The majority opinion heavily relies on *Thompson v. Thompson*, 366 N.W.2d 845 (S.D. 1985) written for this Court by this writer. Indeed, *Thompson* is extremely apposite to this case. *Thompson* was a case of first impression on RURESA. We relied therein on *County of Stanislaus v. Ross*, 41 N.C. App. 518, 522, 255 S.E.2d 229, 231 (1979) which contains identical language now employed in this opinion. *Thompson* cited three cases for the proposition that child support payments must be "... based on the circumstances *presently* before that court."

This takes me to a final point which is this: In my opinion, this trial court decided the financial circumstances based on a stale affidavit. It was not based upon "circumstances *presently* before that court." For that reason, I join in the reversal and for that reason only. As I read the law, particularly SDCL 15–6–43(e), the trial judge can now hear this case on affidavits wholly or partly on oral testimony or depositions. The ball is on his side of the net. *Saturnini*, 110 N.W.2d at 511. "Where the facts are complicated or the affidavits so conflicting as to render cross-examination essential, then the desirability of expeditious procedure must give way to a more formal hearing." *Saturnini*, 110 N.W.2d at 483. Quoted with approval in *Dixon* at 511.

---

\* According to *Havens v. Henning*, 418 N.W.2d 311 (S.D.1988), a circuit judge must exercise his "discretion in setting the child support obligation when the obligor's net monthly income exceeds $1,500." Here, under Conclusion of Law IV, the trial judge found the combined income of the mother and her new spouse to be approximately $1,702 per month. Inasmuch as this amount was over $1,500, perhaps the trial judge did not feel obliged to strictly go under the guidelines, per our decision in *Havens*. One may assume that he thus did not articulate the various criteria for a deviation. To put it another way, the trial judge might well have acted expressly under the theory of *Havens*, which is the "abuse of discretion" test when the income exceeds $1,500.